## I. J. DE GRAFF v. STATE.

No. A-23.    Opinion Filed July 29, 1909.

(103 Pac 538.)

1.    INDICTMENT AND INFORMATION—Constitutional Law—Verification — By Whom Verified —How Verified —Grounds—Arrest Without Warrant.   (a) Section 5239, Wilson's Rev. & Ann. St. 1903, in mandatory terms, makes the information the basis upon which a warrant of arrest shall issue, and requires the information to be verified by oath or affirmation.

(b)    Section 5306, Wilson's Rev. & Ann. St. 1903, provides that an information may be verified by the county attorney, the complainant, or some other person.

(c)    The latter part of section 5306, Wilson's Rev. & Ann. St. 1903, which provides that a county attorney may verify an information upon information and belief, having been declared to be in violation of the Constitution of the United States by the Supreme Court of Oklahoma Territory, was not in force in the territory at the incoming of statehood, and was therefore not put in force in this state by the Schedule of the Constitution.

(d)   No warrant of arrest can be lawfully issued except upon an information duly verified as provided for in sections 5239 and 5306, Wilson's Rev. & Ann. St. 1903.

(e)   The question of the verification of an information was not passed upon in the case of **Evans v. Willis,** 22 Okla., 310, 97 Pac. 1047, 19 L. R. A. (N. S.) 1050.

(f)   A warrant of arrest cannot be issued upon suspicion, hearsay, or belief, but only on some fact certain supported by oath or affirmation, which is sufficient to cause the officer whose duty it is to issue the warrant or to direct its issuance to believe that an offense has been committed, and that the party for whose arrest it is issued is probably guilty of having committed the offense.   This is a fundamental principle of American jurisprudence and is required by the Constitution and statutes of our state.

(g)   Cases in which arrests may be made without warrant are enumerated in our statute.

(h)   In cases where no witness knows all of the facts necessary to show that an offense has been committed and that the accused is probably guilty thereof, the affidavits of any number of witnesses may be taken to such facts as are within their knowledge, and if they show that an offense has been committed, and satisfy the officer charged with the duty of issuing the warrant of arrest or directing its issuance that the accused is probably the guilty party, and these affidavits are copied into the information and made a part thereof, then the county attorney or any other person would be fully justified in verifying the information as required by statute, and upon such information, so verified, a warrant of arrest can be legally issued.   The doctrine announced in **Ex parte Flowers,** 101 Pac. 860, and in **Salter v. State,** 102 Pac. 719, cases reported in this volume, approved.

2.     **SAME—Duplicity—Election of Count...** (a) An information or indictment must charge but one offense: but when the same act may constitute different offenses, or the proof may be uncertain as to which of two or more offenses the accused may be guilty, the different offenses may be set forth in separate counts in the same indictment or information: but in such cases the information or indictment must show upon its face that the separate counts are all based upon one and the same transaction.   **Sturgis v. State,** ante, p. 362, 102 Pac. 57, cited and approved.

(b)   The offenses of maintaining a place where liquors are kept for the purpose of sale, and of transporting liquor from one place in the state to another place therein, and of knowingly having the possession of liquor for the purpose of sale and of selling such liquor, are all separate and distinct offenses, and are based upon separate acts, and cannot be joined in the same information or indictment.

(c) When an information or indictment attempts to charge separate offenses against the accused, not based upon one and the same transaction, the state should be compelled to elect the count upon which it will go to trial, and the other counts should be dismissed. If this is not done, the information or indictment should be set aside.

3.  INTOXICATING LIQUORS—Offenses—Information—Sufficiency—Transporting Liquor—Negativing Exceptions—Burden of Proof—Duplicity. (a) An information or indictment for transferring liquor from one place in the state to another place therein must show upon its face a removal from one locality in the state or city or county to another locality in the state or in the city or county. If these different localities are known, they should be stated; if not known, this should be stated, and it should be made to appear that the removal came within the meaning of the law.

(b) The removal of liquor from one room in a house to another room in the same house is not an offense within the meaning of the law. Each house constitutes but one place.

(c) In an information or indictment for the removal of liquor from one place in the state to another place therein, it is not necessary to state that such liquors were not acquired by lawful purchase. This is a matter to be pleaded and proven by the defendant.

(d) A negative averment to the matter of an exception or proviso in a penal statute is not necessary in an information or indictment unless the proviso or exception enters into and becomes a material part in the description of the offense. Smythe v. State, ante, p. 286, 101 Pac. 611, cited and approved.

(e) When an exception is stated in a statute, and the facts necessary to bring the act charged within such exception are peculiarly within the knowledge of the defendant, the state is not required to prove the nonexistence of such facts, but the burden is upon the accused to prove the existence of such facts as a matter of defense.

(f) When a person sells a number of different kinds of prohibited liquors to one person or to a number of different persons, and such sale constitutes but one transaction, but one offense has been committed, and the information may charge in the same count the sale of each kind of liquor so sold, and proof of the sale of any or all of the kinds of liquor described therein will support the allegation of the information. Such a count is free from the objection of duplicity.

4.  SAME—Indictment and Information—Estoppel to Prosecute—Evidence—Admissibility—Cross-Examination— Credibility —Information—Sufficiency—Admissibility of Evidence. (a) No officer can, by his consent to or connivance in the commission of a public of-

fense, destroy the criminal character of the act done or free the perpetrator from prosecution or punishment for the crime so committed.·

(b) The state is not estopped from prosecuting a criminal by the action of a county attorney or other officer.

(c) It is not improper for officers, charged with the duty of enforcing the laws, to employ detectives to ferret out and procure evidence for the prosecution of parties who violate the law.

(d) It is proper to allow a searching cross-examination of detectives for the purpose of showing their interest in the case before the court, and thereby affecting their credibility.

(e) In prosecutions for selling liquors when the sale was made prior to the passage of the enforcement act, and the prosecution is based upon the provisions contained in our Constitution, if the liquor sold comes within one of the classes mentioned in the Constitution it need not be alleged or proven that such liquor was intoxicating; but if the liquor sold is not one of the enumerated classes, but is a substitute therefor, then this fact must be charged in the information or indictment, and the state must prove that such substitute was intoxicating.

(f) For offenses committed against the enforcement act, it is not necessary for the state to allege or prove that substitutes for the kind of liquor therein enumerated were intoxicating. In describing such liquors it is sufficient to follow the language of section 1, art. 3, of the enforcement act (Laws 1907-08, p. 603, c. 69), or to use language of similar import. Markinson v. State, ante, p. 323, 101 Pac. 354, approved.

(g) In prosecutions for violating the provisions of sections 1, 3, 12, and 14 of the enforcement act, where the intent with which the prohibited act was done is material, it is competent for the state to prove that whisky and beer glasses and corks of whisky or beer bottles, and bottles which looked like beer or whisky bottles, were seen in the place, the character of which is under investigation, and that in the back yard of such place and on the same lot there was found prohibited liquors, or empty bottles thereof, and that men were seen to enter such place and remain a few minutes, and that upon coming therefrom intoxicating liquors were smelt on their breath, and that persons were seen to come out of such place staggering and in an intoxicated condition. This evidence is competent to prove the **quo animo.**

(Syllabus by the Court.)

*Appeal from Pottawatomie County Court; E. D. Reasor, Judge.*

1. J. De Graff was convicted for violation of the liquor law, and he appeals. Reversed and remanded.

On the 7th day of October, 1908, an information was filed in the county court of Pottawatomie county, Okla., against I. J. De Graff, hereinafter called "defendant," which information is as follows:

"Information. In the County Court in and for Pottawatomie County, State of Oklahoma, Before E. D. Reasor, County Judge. State of Oklahoma, Plaintiff, v. I. J. De Graff, Defendant. Information. Comes now V. R. Biggers, the duly qualified and acting county attorney, in and for Pottawatomie county, state of Oklahoma, and gives the county court of Pottawatomie county and state of Oklahoma to know and to be informed that the above-named defendant, I. J. De Graff, late of Pottawatomie county, did, in Pottawatomie county, and in the state of Oklahoma, on or about the 23d day of May, in the year of our Lord one thousand nine hundred and eight and at No. 130 South Union street, Shawnee, unlawfully, knowingly and wilfully keep and maintain a place in which there was received and kept spirituous, vinous, fermented and malt liquors and imitations thereof and substitutes therefor, to wit, whisky, beer, ale and wine, for the purpose of selling, bartering, giving away and otherwise furnishing the same contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the state of Oklahoma.

"Second count: And now comes V. R. Biggers, county attorney as aforesaid, and gives the said county court further to know and be informed that the above-named defendant. I. J. De Graff, late of Pottawatomie county, did, in Pottawatomie county and in the state of Oklahoma, on or about the 23d day of May, in the year of our Lord one thousand nine hundred and eight, unlawfully, knowingly and wilfully ship and in some way carry spirituous, vinous, fermented and malt liquors and imitations thereof and substitutes therefor, to wit, whisky, beer, ale and wine, from a room at No. 130 South Union street, city of Shawnee, a place within the county of Pottawatomie and state of Oklahoma, to another room at No. 130 South Union street in the city of Shawnee, another place within the county of Pottawatomie and state of Oklahoma, contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the state of Oklahoma.

"Third count: And now comes the said V. R. Biggers,

county attorney as aforesaid, and gives the said county court further to know and be informed that the above-named defendant, I. J. De Graff, late of Pottawatomie county, did, in Pottawatomie county and in the state of Oklahoma, on or about the 23d day of May, in the year of our Lord one thousand nine hundred and eight, unlawfully, knowingly and wilfully have the possession of spirituous, vinous, fermented and malt liquors and imitations thereof and substitutes therefor, to wit, whisky, beer, ale and wine, with the intentions then and there to sell, barter, give away and otherwise furnish the same, contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the state of Oklahoma.

"Fourth count: Now comes the said V. R. Biggers, county attorney as aforesaid, and gives the said county court further to know and be informed that the above-named defendant, I. J. De Graff, late of Pottawatomie county, did, in Pottawatomie county and in the state of Oklahoma, on or about the 23d day of May, in the year of our Lord one thousand nine hundred and eight, unlawfully, knowingly and wilfully sell, barter, give away and otherwise furnish spirituous, vinous, fermented and malt liquors and imitations thereof and substitutes therefor, to wit, whisky, beer, ale and wine, unto B. F. Kane, and to divers other persons unknown to your informant, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the state of Oklahoma.

"V. R. Biggers, County Attorney, By J. D. Lydick, Deputy County Attorney.

"State of Oklahoma, Pottawatomie County—ss.: I, J. D. Lydick, being duly sworn, on oath do state that there is probable cause to believe and he does believe the statements and allegations set out in the foregoing information are true. J. D. Lydick.

"Subscribed and sworn to before me, this 7th day of October, 1908. E. D. Reasor, County Judge."

The defendant filed a motion to set aside the information upon the following grounds: (1) That the information was not verified as the law provides. (2) That the information charges more than one offense. This motion was overruled by the court, and the defendant reserved an exception. Defendant then moved that the state be required to elect the count in the information upon which it would proceed to trial. The court overruled this

motion, and the defendant saved an exception. The defendant then separately demurred to each count in the information upon the ground that each of said counts did not conform to the requirements of the law and failed to charge an offense against the laws of the state. These demurrers were by the court overruled, and the defendant saved an exception. Defendant was arraigned and pleaded not guilty. The case being called for trial, both parties announced ready for trial, and a jury was waived, and the case submitted to the court. The court found the defendant guilty on all four counts in the information. Motions for a new trial and in arrest of judgment were filed by the defendant and over-ruled by the court, and exceptions were reserved by the defendant. The defendant was fined $50 and sentenced to 30 days' imprisonment on each count in the information, and that the imprisonment on the second count in the information should begin to run immediately upon the expiration of the term of imprisonment upon which he was sentenced under the first count in the information, and that the imprisonment on the third and fourth counts should begin immediately upon the expiration of the imprisonment upon the counts which preceded them. The case is regularly before us on appeal.

*Freeling & Hood,* for plaintiff in error.—

On necessary verification of information: *Miller v. U. S.,* 8 Okla. 315.

On question of duplicity and election of counts: Bishop's New Crim. Proc. Vol. 1, §§ 459, 461; Wilson's Rev. & Ann. St. 1903 § 5360; 2 McClain's Crim. Law, § 1275; *State v. Warren,* 77 Md. 121; *State v. Shores,* 13 Am. St. Rep. 875; *Bullock v. State,* 10 Ga. 47; *People v. Connor,* 17 Colo. 354; *Diel v. State,* (Tex.) 60 Am. St. Rep. 37.

On necessity of negativing exceptions: 1 Bishop's Crim. Proc. 637; *State v. Williamson* (Utah) 83 Am. St. Rep. 780; *Elkins v. State,* 13 Ga. 435; *How v. State,* 10 Ind. 423.

On use of "spotters" by officers: *Wilcox v. People,* 67 Pac.

343, (Colo); *People v. Braisled,* 58 Pac. 796, (Colo.); *Ford v. City of Denver,* 51 Pac. 1015; *Saunders v. People,* 38 Mich. 218; *Wright v. State,* 7 Tex. App. 574; *Com. v. Grans,* 97 Mass. 114.

On necessity of proving liquors to be intoxicating: *State v. May,* 34 Pac. 407; *State v. Moulton,* 34 Pac. 412; *Intoxicating Liquor Cases,* 25 Kan. 532.

*Fred S. Caldwell.* for the State. No copy of brief reached the reporter.

FURMAN, PRESIDING JUDGE. (after stating the facts as above). First. The defendant contends that the information in this case is insufficient because it is not verified as directed by law.

Section ·5306, Wilson's Rev. & Ann. St. 1903, contains the following:

"All informations shall be verified by the oath of the prosecuting attorney, complainant or some other person: Provided, that when an information in any case is verified by the county attorney, it shall be sufficient if the verification be based upon information and belief."

If this was all that our statute and Constitution contained upon this subject, then the question presented would be in a very different condition from that which really confronts us. Section 5239, Wilson's Rev. & Ann. St. 1903, is as follows:

"(5239) § 103. When an information, verified by oath or affirmation, is laid before a magistrate, of the commission of a public offense, he must, if satisfied therefrom that the offense complained of has been committed, and that there is reasonable ground to believe that the defendant has committed it, issue a warrant of arrest.".

From this it is seen that the warrant of arrest must be based upon the information. The statute might have provided that the warrant of arrest should be issued upon an affidavit or affidavits, which stated facts sufficient to satisfy the magistrate that an offense had been committed, and that there was reasonable ground to believe that the party charged had committed it; but there is no such provision in our statute. On the contrary, by the express language of the statute, the information is made

the root and foundation of the matter, so far as the issuance of the warrant of arrest is concerned, and this information must be verified by oath or affirmation.

Another thing about this statute which must not be overlooked is that the magistrate who issues the warrant is the person who must be satisfied that an offense has been committed, and that there is reasonable ground to believe that the defendant did commit it. This calls for the exercise of discretion on the part of the magistrate who issues the warrant. It is a judicial act on his part. No such duty is imposed upon the witness who verifies the information by oath or affirmation. Section 39, Bunn's Const., is as follows:

"Sec. 39.—Search Warrants and Seizures.—Sec. 30. The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, describing as particularly as may be the place to be searched and the person or thing to be seized."

All statutory provisions must be construed in the light of this section of the Bill of Rights of our Constitution. It must not be supposed that an arrest cannot be legally made, except upon warrant. The protection afforded by this provision is against unreasonable seizures and arrests without warrant, and it prescribes the condition upon which warrants may issue. There are many cases mentioned in our statutes, in which arrests may be lawfully made without warrants, and upon examination it will be found that they are not only reasonable, but that they are necessary to the administration of justice; but, save and except the instances mentioned in the statutes, no arrest can be lawfully made except upon a warrant, and no warrant can be lawfully issued except as is permitted in this constitutional provision. This necessarily makes the issuance of a warrant of arrest a judicial act, to be exercised by the officer who is clothed by law with the power and authority to determine as to whether or not the warrant should be issued, and this discretion must rest upon facts verified by oath or affirmation. The question of prob-

able cause and of reasonable ground to believe that an offense has been committed are addressd alone to the judgment of such officer, and their determination cannot, by statute, be vested in the person who verifies the facts from which these opinions, conclusions, or deductions are drawn. Any other construction would reduce this constitutional guaranty to an absurdity, and would violate its letter and spirit and defeat its purpose.

This provision of our Constitution is almost an exact copy of the fourth amendment of the Constitution of the United States, which reads as follows:

"Article IV (30). The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue but upon probable cause supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

It is true that the language is not in all respects the same in the two provisions; but the substance is identical. For a proper understanding of the question before us, it is important to find out what construction the United States courts have placed upon this provision. The first and leading case upon this subject is that of *Ex parte Burford,* 3 Cranch, 448, 2 L. Ed. 495. John A. Burford applied to the Supreme Court of the United States for a writ of *habeas corpus,* alleging that he was confined in the jail of Alexander county, in the District of Columbia, under and by color of process of the United States, and praying that the regularity of his confinement might be examined, and its legality determined. The writ was issued as prayed for. The record then proceeds as follows:

"Upon the return of the *habeas corpus,* and *certiorari,* it appeared that on the 28th of December, 1805, Burford was committed to the gaol of Alexandria county, by a warrant under the hands and seals of Jonah Thompson, and ten other justices of the peace for that county; which warrant was in the following words: 'Alexandria County—ss.: Whereas, John A. Burford, of the county aforesaid, shopkeeper, has been brought before a meeting of many of the justices of the peace for the said county, and by them

was required to find sufficient sureties to be bound with him in a recognizance, himself in the sum of four thousand dollars, and securities for the like sum, for his good behavior towards the citizens of the United States, and their property; and, whereas, the said John A. Burford hath failed or refused to find such sureties. These are, therefore, in the name of the United States, to command you the said constables, forthwith to convey the said John A. Burford to the common gaol of the said county, and to deliver him to the keeper thereof, together with his precept; and we do, in the name of the said United States, hereby command you, the said keeper, to receive the said John A. Burford into your custody, in said gaol and him there safely keep, until he shall find such sureties as aforesaid, or be otherwise discharged by due course of law. Given under our hands and seals this 28th day of December, 1805. To any constable, and the gaoler of the county of Alexandria.' "

The opinion of the Supreme Court of the United States was rendered by Chief Justice Marshall. In discussing the sufficiency of the return made and the illegality of the warrant under which the defendant was held, Chief Justice Marshall quoted, with approval, from the argument of the counsel for defendant, as follows:

"It [the warrant] does not allege that witnesses were examined in his [defendant's] presence, or any other matter whatever, which can be the ground of their order to find sureties. If the charge against him was malicious, or grounded on perjury, whom could he sue for malicious prosecution, or whom could he indict for perjury? There ought to have been a conviction of his being a person of ill fame. The fact ought to have been established by testimony."

The unanimous opinion of the Supreme Court of the United States, as stated by Chief Justice Marshall, was that "the warrant of commitment was illegal for want of some good cause certain, supported by oath," and the prisoner was discharged from custody upon this ground alone. None except the grossly ignorant, the mendacious, or the vicious will question the learning, the ability, or the integrity of. Chief Justice Marshall. His is one of

2 Cr.—34

the greatest names in the judicial history of the world. We feel perfectly safe in following in his footsteps, it matters not whose criticisms we may incur for so doing.

This matter was again passed upon by Judge Bradley in 3 Woods, 502, Fed. Cas. No. 12,126, in the Matter of the Rule of the Court prescribing the duty of the Circuit Court Commissions of the United States. The law is clearly stated in the syllabus, which is as follows:

"(1) An affidavit made solely upon information derived from others whose names are not given, by a person who swears that he has good reason to believe, and does believe, that a certain person, naming him, has committed an offense against the law, describing it, does not meet the requirements of article 4 of the amendments to the Constitution of the United States. (2) The probable cause mentioned in that article which is to be supported by oath or affirmation, and upon which alone a warrant can issue, must be submitted to the committing magistrate, who must judge of the sufficiency of the ground shown for believing the accused party guilty. (3) The magistrate before issuing a warrant, should have before him the oath of the real accuser to the facts on which the charge is based, and on which the belief or suspicion of guilt is founded."

These two decisions, which, to our minds, are conclusive of the subject, are substantially followed by the Supreme Court of Oklahoma Territory, first, in the case of *Miller v. United States*, 8 Okla. 315, 57 Pac. 836, and in the case of *Mulkins v. United States*, 10 Okla. 288, 61 Pac. 925. In the latter case the court said:

"The appellant, William Mulkins, was charged by complaint in the district court of Canadian county with the crime of cutting and removing timber from the Caddo Indian reservation. The complaint was verified by Hon. B. S. McGuire, assistant United States attorney, on information and belief only. When the case was called for trial, the defendant, by his counsel, objected to the introduction of any evidence, because of the insufficiency of the complaint. After trial, conviction, and sentence, the defendant filed his motion for a new trial, and after it was overruled by the court he interposed a motion in arrest of judgment, which was also denied. Exceptions were saved to each of these rulings, and

an appeal taken by transcript to this court. The appellant presents just one question to this court, viz., the sufficiency of the verification of the complaint. A verification, on information and belief, to a complaint in a criminal case, is not sufficient to authorize a court to put the defendant upon trial for the offense charged therein. Such complaint should be sworn to positively, or the facts upon which the warrant should issue ought to be presented to the court by a positive affidavit, or by competent evidence. *Miller v. U. S.*, 8 Okla. 315, 57 Pac. 386. The complaint was not sufficient. For the reason herein stated, the case is reversed and remanded, at the cost of the appellee, and the defendant will be held to await the action of the district court of Canadian county, and said court is hereby directed to grant leave to the United States to properly verify the complaint heretofore filed, or to file a new complaint for such offense."

But it may be said that the fourth amendment of the Constitution of the United States is not a restriction upon the exercise of power by the officers of a state, in dealing with their citizens and in enforcing their own laws. As a general proposition we assent to this statement; but three difficulties present themselves in attempting to evade the force of the authorities above quoted: (1) The provisions of our Constitution touching this matter are almost identically the same as those of the Constitution of the United States. (2) When the provision of our Constitution, with reference to the issuance of warrants of arrest was practically copied from the Constitution of the United States by our constitutional convention, the construction which had been placed upon this provision by the United States courts, as well as by our territorial Supreme Court, was well known, and we are therefore bound to believe that said provision was adopted subject to this construction. (3) These decisions are in strict harmony with section 5239, Wilson's Rev. & Ann. St. 1903, hereinbefore quoted in full.

As section 5239, Wilson's Rev. & Ann. St. 1903, is in harmony with our Constitution, it was continued in force by the Schedule of the Constitution, the second section of which is as follows:

"Sec. 451.—Oklahoma Laws in Force.—Sec. 2. All laws in force in the territory of Oklahoma at the time of the admission of the state into the Union, which are not repugnant to this Constitution, and which are not locally inapplicable, shall be extended to and remain in force in the state of Oklahoma until they expire by their own limitation or are altered or repealed by law." (Bunn's Const. § 451.)

Section 5239 in mandatory terms provides that the informa- tion is the basis of the issuance of the warrant. Without an information, verified. as therein provided, no warrant of arrest can be legally issued. The latter part of section 5306, Wilson's Rev. & Ann. St. 1903, which provides that an information can be verified on information and belief by the county attorney, had been declared to be in conflict with the fourth amendment of the Constitution of the United States, by the highest courts of our land, before statehood. It was not a law in force in Oklahoma Territory at the time of the admission of the state into the Union. At this time this provision was a dead letter upon the statutes of Oklahoma Territory. As our Constitution contains provisions almost identically the same as the Constitution of the United States, we are forced to hold that the provision allowing such verification of an information was not revived and put in force by the Schedule of the Constitution. The question now before us must be determined by section 5239, Wilson's Rev. & Ann. St., and the provision of our Constitution above quoted. We see no logical escape from this conclusion.

We have not overlooked the able and well-considered opinion of the Supreme Court of this state, rendered by Chief Justice Williams in the case of *Evans v. Willis,* 22 Okla. 310, 97 Pac. 1047, 19 L. R. A. (N. S.) 1050. In that case the question here considered was not presented to or passed upon by the Supreme Court. The exact language of Chief Justice Williams is as follows:

"It is not necessary to determine whether or not article 4 of the amendments to the Constitution of the United States, providing that 'the right of the people to be secured in their persons,

houses, papers and effects, against unreasonable searches and seizures, shall not be violated and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or thing to be searched,' changes the common-law rule as to information in this country."

The court then quotes the statute with reference to information, but expresses no opinion as to its constitutionality. The only question passed upon by our Supreme Court in *Evans v. Willis* was as to the right of private persons to prosecute parties for public offenses by information, and the court properly held that this could not be done, and that informations could only be exhibited by county attorneys or some other officer thereto authorized by law. In this opinion we fully concur. The manner of verifying an information and our constitutional provisions upon this subject, and the Schedule of our Constitution as to what territorial laws were continued in force in this state by the Constitution, were not presented to or discussed by our Supreme Court. It would be impossible to inject the question of the manner in which an information should be verified into the issues presented in the case of *Evans v. Willis*. In that case the information was properly verified, so it cannot be said that the opinion in that case in any way conflicts with the authorities herein cited or the views herein expressed.

As long as the statute requires the information to be the basis of the warrant of arrest, in view of the provision of our Constitution with reference to the conditions which must exist before a warrant of arrest can issue, the difficulties pointed out in this opinion will continue to exist. If the Legislature should see fit to amend the statute and provide that the warrant of arrest shall issue upon an affidavit or affidavits, stating some fact or facts certain which would satisfy the officer charged with the duty of issuing the warrant of arrest that a public offense had been committed, and that the party charged therewith had probably committed it, then the difficulty which now confronts us would be removed. It could also be provided that the information exhibited by the

county attorney should be based upon these affidavits. It could then be verified by the county attorney just as indictments are verified by the grand jury. Indictments are based upon the sworn testimony given by witnesses before the grand jury, and are verified by the official oaths of the grand jury. If upon a motion to set aside an indictment, it should be made to appear that as a matter of fact there was no legal testimony as to the matters presented to and acted upon by the grand jury, showing that a public offense had been committed, and that it was probable that the defendant has committed the crime charged against him, the indictment would be set aside, notwithstanding the official oaths of the grand jury. Section 5339, Wilson's Rev. & Ann. St. 1903, is as follows: "(5339) § 203. The grand jury may not receive hearsay or secondary evidence."

The Supreme Court of Oklahoma Territory, in *Royce v. Territory*, 5 Okla. 65, 47 Pac. 1084, said:

"Mr. Rice, in his work on Criminal Evidence (volume 3, p. 409), says: 'The jealousy, with which the early law guarded the secrets of the grand jury room, has largely disappeared. The sacramental character of that august body is very imperfectly recognized at the present day. The theory that the proceedings before this body are beyond the scrutiny or condemnation of court or counsel is a foolish pretense that is very generally abandoned. Malice, corruption, and ignorance frequently combine to impress upon the proceedings of this body the tyrannical and oppressive functions of the Star Chamber and the Council of Ten, and to say, or even intimate, that, where corrupt practices exist there is no method open for their proper disclosure, is simply to insist that our criminal law is crippled with a hideous deformity.' At the common law an indictment is invalid and may be quashed where it is found and returned by a grand jury not legally constituted, or where there was no legal evidence before the grand jury, upon which it was based; and this invalidity might be shown upon a plea in abatement. The proceedings of grand juries cannot ordinarily be disclosed; but this rule is not to be carried to the extent of obstructing justice or creating wrong and hardship. A court may inquire into the evidence upon which a grand jury has found an indictment, and, if such evidence is plainly illegal

and incompetent, should quash the indictment. *People v. Restenblatt*, 1 Abb. Prac. (N. Y.) 268; Rice on Ev. 411; Bishop's New Criminal Procedure, vol. 1, § 764. *State v. Grady*, 12 Mo. App. 361; *United States v. Kilpatrick* (D. C.) 16 Fed. 765."

It is a fundamental principle of American jurisprudence that liberty is too sacred to be taken from an individual, unless probable cause, in the language of Chief Justice Marshall, "upon some good cause certain, supported by oath." It cannot be constitutionally done upon suspicion, hearsay, opinions or belief. If a warrant of arrest issues upon the belief of the party making the affidavit, it does not rest upon some act certain supported by oath, committed by the party arrested; but it depends alone upon the mental condition of the affiant. This, the Bill of Rights of our Constitution in positive and mandatory language prohibits. The Constitution does not require the verification of the information; but it prohibits the issuance of a warrant of arrest except upon probable cause supported by oath or affirmation. No form of procedure is established in the Constitution as to how this shall be done in misdemeanors. It is the statute which makes the information the basis of the issuance of a warrant of arrest and requires the information to be verified by oath or affirmation. If we are to construe this statute strictly, many cases might arise, such, for instance, as cases of circumstantial evidence, in which no witness could be found who had knowledge of all of the facts of the case, and who would be qualified to verify all of the allegations of the information. In such cases it would be impossible to proceed by information. This court has not placed any such construction upon our statute, requiring the verification of an information. Section 5144, Wilson's Rev. & Ann. St. 1903, is as follows:

"(5144) § 8. The rule of common law that penal statutes are to be strictly construed, has no application to this chapter. This chapter establishes the law of this territory respecting the subjects to which it relates, and its provisions and all proceedings under it are to be liberally construed, with a view to promote its objects, and in furtherance of justice."

So we are not only justified but we are required, to construe the statute with reference to the verification of information liberally, so that it may accomplish the purpose for which it was enacted, and in furtherance of justice.

As is hereinbefore shown, that portion of section 5306, Wilson's Rev. & Ann. St., which provides "that an information can be verified upon information and belief by the county attorney," was not adopted and put in force in the state by the Schedule of our Constitution for two reasons: (1) Because that portion of said section was not in force in Oklahoma Territory at the time when statehood went into effect; it having been twice declared by the Supreme Court of Oklahoma Territory to be unconstitutional and therefore not operative. It was therefore a dead letter upon the statutes of the territory. The Schedule of our Constitution only continued and put in force in the state those statutes which were then in force in Oklahoma Territory. (2) Said portion of section 5306 is in violation of section 39, Bunn's Const. The Schedule of the Constitution did not and could not put in force in the state any of the statutes of Oklahoma. Territory which were in conflict with the Constitution. Therefore the provision that informations may be verified by the county attorney upon information and belief is not and never has been in force in this state.

Do indictments allege that they are based upon the information and belief of the grand jury? Is it not true that they charge the offense in plain and direct language as a 'matter of fact? They are founded upon the evidence before the grand jury and are supported by the positive oaths of the grand jurors. Would an indictment stand when no direct evidence had been presented to the grand jury upon which their positive oaths were predicated? Certainly not. It may be said that indictments are not each sworn to by the grand jury, but that the official oath which was administered to the grand jury when they were impaneled applies to all indictments found at the session of the court at which they were impaneled. Our reply is that the statute so directs, in prosecutions by indictment, and also directs that

each information exhibited by a county attorney must be verified by the county attorney or the complainant· or some other person. By this we are bound.

The conclusion at which we have arrived is fully set forth by Judge Doyle in *Salter v. State, ante,* p. 464, 102 Pac. 724. This court there said:

"The fundamental requirements of the ordinance of the Bill of Rights are: That the facts and circumstances tending to show criminality should be made to appear to a magistrate himself, by affidavits, complaint, or information positively verified by oath or affirmation and that the magistrate must himself find in the facts thus shown probable cause and reasonable belief that the defendant has committed an offense before a .warrant of arrest shall issue. Section 5306, Wilson's Rev. & Ann. St. requires that: 'All informations shall be verified by the oath of the prosecuting attorney, complainant, or some other person, etc.' We do not wish, however, to be understood as holding that the information must be sworn to by persons having actual knowledge of the offense charged. See *Ex parte Flowers,* (decided at this term, opinion by Baker, Judge, *ante,* p. 430, 101 Pac. 860. The evidence of probable cause, however, must be made upon oath or affirmation setting forth the facts constituting the offense or facts and circumstances, showing that a misdemeanor has been committed, and that there is probable cause for believing that the accused is guilty and making it appear to the court that the complaint is based on something more than mere information, belief. or suspicion."

In the Flowers Case, *ante.* p. 430. 101 Pac. 860. there was an affidavit, alleging in direct terms facts which showed that the defendant had committed a misdemeanor. This affidavit was attached to and incorporated in the information. We held that this fully justified the county attorney in verifying the information, in direct and positive terms, as the statute in force requires shall be done, just as a grand jury charges in direct and positive terms the commission of an offense as a matter of fact and not of belief. If one witness knows one fact, and other witnesses know other facts, which combined are sufficient to satisfy the officer charged with the duty of issuing the warrant of arrest that an

offense has been committed, and that the defendant is probably guilty of having committed it, those affidavits may be attached to and incorporated in the information, and the county attorney will then be fully justified in verifying the information, as was done in the Flowers Case, and as the law directs.

If probable cause can be made to appear from one affidavit, why can it not be made to appear from two or more affidavits? In the case of *State v. Wisner,* 35 Kan. 277, 10 Pac. 856, it was said:

"The county attorney had the right, for the benefit of the defendant, to file with his information a bill of particulars or any sworn statements, showing what specific offense he intended to charge, when he verified the information."

But notwithstanding the fact that these affidavits are filed with and embodied in the information, our statute requires that the information itself must be verified by the county attorney, the complainant, or some other person. When the county attorney has a person who can so verify an information, it is not necessary to file such affidavits; but, when no such person can be found, then, in order to give full effect to the prosecution of misdemeanor by information; the above course may be pursued.

The statute makes the county attorney the public accuser in cases presented by information, just as the members of the grand jury are the public accusers in cases presented by indictment. This fact must be remembered when we come to consider the ground upon which the county attorney acts when he verifies an information, not upon his personal knowledge, but upon accompanying affidavits. No county attorney should hesitate to so act under these circumstances. The statute requires that each information must be signed by the county attorney. So there can be no such thing as a legal information unless it is signed and presented by the county attorney, or some other one authorized by law to do so, as was properly held by our Supreme Court in the case of *Evans v. Willis,* 22 Okla. 310, 97 Pac. 1050, 19 L. R. A. (N. S.) 1050. The statute also provides that each

information must be verified by the oath or affirmation of the county attorney or the complainant or some other person. When verified by the county attorney, he is acting in his capacity as public accuser. If he has personal knowledge of the facts stated in the information, he makes the verification upon such personal knowledge. If he has no personal knowledge, then he can incorporate in the information the affidavits of those who have such personal knowledge, and make the verification in his capacity of public accuser in connection with such affidavits; but in either condition the verification must be made in positive terms, just as an offense in an indictment is charged in positive terms. The statute now in force in this state so requires and we are powerless to change the statute. For the reasons and upon the authorities hereinbefore quoted, in connection with the reasons given and the authorities quoted in *Salter v. State,* we hold that the motion to set aside the information in this case, because it was not properly verified, should have been sustained.

Second. The defendant filed a motion to set aside the information upon the ground that it charged more than one offense. That it does charge more than one offense cannot be disputed. Count 1 charges.

"That on the 23d day of May, 1908, I. J. De Graff knowingly and wilfully kept and maintained a place in which there was received and kept spirituous, vinuous, fermented, and malt liquors and imitations thereof and substitutes therefor, to wit: Whisky, beer, ale, and wine, for the purpose of selling, bartering, giving away, and otherwise furnishing the same."

Count 2 charges:

"That on the 23d day of May, 1908, I. J. De Graff did unlawfully, knowingly, and wilfully ship and in some manner convey spirituous, vinous, fermented, and malt liquors and imitations thereof and substitutes therefor, to wit: whisky, beer, ale and wine from a room at 130 South Union avenue, in the city of Shawnee, to another room in said building, state of Oklahoma," etc.

Count 3 charges:

"That on the 23d day of May, 1908, I. J. De Graff did un-

lawfully, knowingly, and wilfully have the possession of spirituous, vinous, fermented, and malt liquors, and imitations thereof, and substitutes therefor, to wit: whisky, beer, ale, and wine, with the intent then and there to sell, barter, give away, and otherwise furnish," etc.

Count 4 charges:

"That on the 23d day of May, 1908. I. J. De Graff did unlawfully, knowingly, and wilfully sell, barter, give away, and otherwise furnish spirituous, vinuous, fermented and malt liquors, and imitations thereof and substitutes therefor, to wit: whisky, beer, wine, and ale, unto B. F. Kane and to divers other persons unknown to your informant," etc.

This question has heretofore been passed upon by this court in the case of *Sturgis v. State, ante,* p. 362, 102 Pac. 57. We there, in the syllabus, said:

"(a) An indictment or information must charge but one offense; but when the same acts may constitute different offenses, or the proof may be uncertain as to which of two or more offenses the accused may be guilty, the different offenses may be set forth in separate counts in the same indictment or information; but in such cases the information or indictment must show upon its face that the separate counts all refer to one and the same transaction. As to how this should be done, see opinion."

For the reasons and upon the authorities cited in the Sturgis Case, this motion should have been sustained, or the court should have required the state to elect the count upon which it would proceed to trial, and have set aside the other counts. The trial court overruled the motion to set aside the information and failed to require the state to elect upon which count it would proceed to trial. In this there was error, and, as this action of the court was duly excepted to by the defendant, the conviction in this case must be set aside.

Third. The defendant then filed separate motions attacking each of the counts in the information. The first, third, and fourth counts are substantially in the language of the statute. They fully notified the defendant of the nature and cause of the accusations against him, as section 29 of Bunn's Constitution of Okla-

homa required.  The court therefore did not err in sustaining these counts.

The second count does not charge an offense against the law. It charged the defendant with conveying liquor from one room in a house to another room in the same building. We agree with counsel for the defendant in saying:

"We think this does not charge a public offense, for certainly the Legislature did not mean to create an offense sufficient to deprive a citizen of his liberty, for removing liquor for a distance, however insignificant. If this is the law, we commit the offense when we change a bottle from one pocket to another."

Counsel might have gone further and said that if this is the law a citizen commits an offense every time he takes a drink, for in so doing he removes the liquor from the bottle or glass to his stomach, by way of his mouth. We cannot sustain any such absurd construction of the statute. To our minds it is clear that the Legislature only intended to make criminal a removal of liquor from one locality in the state or in a city or county to another locality in the state or city or county. These different localities or places must be separate and distinct from each other, or the offense of removing such liquors is not complete. The information must, upon its face, show that such a removal has been made, or no public offense will be charged. If the different localities are known, they should be alleged as descriptive averments. If they are not known, then enough should be stated in the information to show that the removal came within the purpose of the law.

Counsel for the defendant further insists that the second count is fatally defective because it fails to negative the exceptions contained in the statute. This is the second time that the question has been presented to this court, as to the necessity of negativing in an information or indictment the exceptions contained in section 1, article 3, of the enforcement act (chapter 69, p. 603, Sess. Laws 1907-08). In order to set this question at rest we will quote the entire section:

"Article III, Sec. 1. It shall be unlawful for any person, individual, or corporation, to manufacture, sell, barter, give away, or otherwise furnish except as in this act provided, any spirituous, vinous, fermented or malt liquors or any imitation thereof or substitute therefor; or to manufacture, sell, barter, give away, or otherwise furnish any liquors or compounds of any kind or description whatsoever, whether medicated or not, which contain as much as one-half of one per centum of alcohol, measured by volume, and which is capable of being used as a beverage, except preparations compounded by any licensed pharmacist, the sale of which would not subject him to the payment of special tax required by the laws of the United States; or ship or in any way convey such liquors from one place within this state to another place therein except the conveyance of a lawful purchase as herein authorized, or to solicit the purchase or sale of any such liquors, either in person or by sign, circular, letter, card, price list, advertisement, or otherwise, or to distribute, publish, or display any advertisement, sign or notice where any such liquor may be manufactured, bartered, sold, given away, or otherwise furnished, or to have the possession of any such liquors with the intention of violating any of the provisions of this act. A violation of any provision of this section shall be a misdemeanor, and shall be punished by a fine of not less than fifty dollars ($50.00) nor more than five hundred dollars ($500.00) and by imprisonment for not less than thirty days, nor more than six months; provided, however, that the provisions of this act shall not apply to the manufacture and sale of unfermented cider and wine made from apples, grapes, berries or other fruit grown in this state, and the use of wine for sacramental purposes in religious bodies."

A careful analysis of this statute will show that the exceptions which it contains are not complete in and of themselves, but that they refer to other independent and separate sections of this act. The enacting clause creating the offenses therein named can be read without reading those parts of the statutes upon which the exceptions are founded. It is only when this cannot be done, and when the exceptions are so incorporated in and made a part of the enacting clause as to become a material part of the definition or description of the offense, that it is necessary to negative the exceptions in the information or indictment.

It is true that there is a conflict in the authorities upon this subject; but it must be remembered that this court is required by statute to construe the penal laws of this state liberally, and in furtherance of justice, and that the common-law rule of strict construction of criminal statutes has no place in our jurisprudence. There is no such statute in many of the states in which decisions have been rendered in conflict with the conclusions at which we have arrived. Therefore these decisions cannot be considered by this court. This matter has already received careful consideration at our hands, in the case of *Smythe v. State, ante,* p. 286, 101 Pac. 611. In an able and lengthy opinion by Judge Baker, this court said:

"It is only when the exception in a penal statute is so incorporated in or with the enacting clause of such statute as to constitute a material part of the definition or description of the offense that it need be negatived in the information; otherwise it will be a matter of defense. A negative averment to the matter of an exception or provisio in a penal statute is not requisite in an information, unless the matter of such exception or proviso enters into, and becomes a material part of, the description of the offense."

The information in the Smythe Case was predicated upon the same section of the enforcement act that the information in this case is based upon. The Smythe information was as follows:

"In the name and by the authority of the state of Oklahoma, now comes L. B. Jackson, the duly qualified and acting county attorney, in and for Creek county, state of Okahoma, and gives the county court of Creek county, state of Oklahoma, to know and be informed that C. P. Smythe did, in Creek county, and in the state of Oklahoma, on or about the 8th day of April, in the year of our Lord one thousand nine hundred and eight, and anterior to the presentment hereof, commit the crime of selling intoxicating liquor, in the manner and form as follows, to wit: Did sell to Stanley Seymour one pint of whisky, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the state."

In concluding his review of the authorities, Judge Baker said:

"Applying the great weight of authorities to the information in the case at bar, we find that the enacting clause of the statute, upon which the prosecution in this case is based, does not contain an exception or proviso which is either descriptive of the offense charged, or an ingredient part thereof. There is therefore no necessity for negativing the same, and the contention of the accused is not sustained."

From this it is clear that the nature of the exception, rather than its location, must determine the question as to whether or not it must be negatived in the information or indictment. This is decisive of the question. There is another view which sustains our position. When an exception is stated in a statute, and the existence of the fact or facts necessary to bring the act charged within the exception are peculiarly within the knowledge of the defendant, the burden is upon the defendant to prove the facts so within his knowledge, and which constitute a defense to the accusation. In other words, the nonexistence of such fact or facts will be presumed in the absence of evidence to the contrary. There is no safer or higher authority on the law of evidence than Mr. Wigmore. His statements of law are clear and accurate, and his citation of authorities, as far as we have had occasion to look them up, are correct and to be relied upon. Referring to the principle above stated, on page 2512, vol. 4, in his work on Evidence, he says: "In sundry other instances, a naturally affirmative defense is sometimes apportioned to the accused burden." In support of this doctrine, in note 4, on page 2512, he says:

"For example, in the illegal sale of liquor, the defendant must prove a license. (1896) *Hornberger v. State,* 47 Neb. 40, 66 N. W. 23; (1897) *Durfee v. State,* 53 Neb. 214, 73 N. W. 676 (the mere possession, irrespective of explanation, raises a presumption of guilt, and shifts the 'burden * * * to establish' lawful possession) ; (1898) *Parker v. State,* 61 N. J. Law, 308, 39 Atl. 651; (1897) *State v. Shelton,* 16 Wash. 590, 48 Pac. 258. In some cases the burden is clearly stated to be merely the second kind, i. e., the duty of producing evidence. (1897) *State v. Lee,* 69 Conn. 186, 37 Atl. 75. Under a statute making an abortion

criminal, unless necessary to save life, the necessity must be evidenced by the defendant."

We have critically examined each of these citations, and find that they all sustain the position taken by the author.

Mr. Black, a standard authority, in his work on Intoxicating Liquors (page 597), announces the same doctrine, as follows:

"Where the subject-matter of a negative averment lies peculiarly within the knowledge of the other party, the averment is taken as true, unless disproved by that party. Such is the case in civil or criminal prosecutions for a penalty for doing an act which the statutes do not permit to be done by any person except those who are duly licensed therefor; as, for selling liquor, exercising a trade or profession, or the like. Here the party, if licensed, can immediately show it without the least inconvenience; whereas, if proof of the negative were required, the inconvenience would be very great. Another view advanced by the court in Georgia is that a plea of 'not guilty' to a charge of selling without a license, amounts to an allegation of selling with license, and the rule applies that he who alleges affirmative must prove it, especially if it is peculiarly within his knowledge."

Now if it is not necessary for the state to prove the nonexistence of such exceptions, why is it necessary to negative them in the information or indictment? That this negative is not necessary is held in the following cases. In *Commonwealth v. Harvey*, 16 B. Mon. (Ky.) 1, the court said:

"(1) In an indictment for keeping a tippling house, it is sufficient to aver that the defendant kept a tippling house, without averring that he had not a license to retail spirits."

In *State v. Sorrell*, 98 N. C. 739, 4 S. E. 630, the Supreme Court said:

"It is too well settled to require argument, or the citation of authority, that, after the prosecution has produced evidence on the trial to prove the sale of spirituous liquors as charged in the indictment, the burden rests on the defendant to produce in evidence, in his defense, a license to retail such liquors, if he have one. It was not necessary for the prosecution to show that he had no such license. *Stare decisis*."

In *State v. Devers*. 38 Ark. 518. the Supreme Court said:

2 Cr.—35

"It was not essential that the indictment .should have specifically alleged that the owner of the liquor had not obtained license."

In *State v. Beneke,* 9 Iowa, 206, the court said:

"Then, we start with the proposition that primarily the sale of intoxicating liquors is prohibited; but by the act of 1857 (section 2), any one, etc., except keepers of certain kinds of houses, may buy and sell for certain enumerated purposes, provided they obtain a license, and give a bond in the manner therein provided. Prohibition is the rule, and selling the exception. The rule for negativing excepted cases is that the indictment must negative exceptions made in the enacting clause; but these matters are in another act, and so far from being such that the information must notice them. The defendant must plead a license, if he have one. Still more unnecessary is it that the complaint should aver that defendant is not the keeper of a hotel, etc., for these could not sell under either act; not under that of 1855, because that contains a general prohibition, and not under that of 1857, for while that qualifies the other act, and permits some to sell, under conditions, it excepted the classes named, and they cannot even obtain a license. And still more remote is the idea that the information should aver that the liquors were not sold for mechanical or other permitted purposes. This has no connection with the rule we are considering, while the general rule is that none can sell, the exception is that even those who may obtain a license can obtain it to sell only for those purposes. These objections are without weight. It was not requisite that the complaint should negative or except any of these provisions."

In *State v. Jordan,* 39 Iowa, 388, the court said:

"It was held by this court in *State v. Collins,* 11 Iowa, 141, that an indictment for nuisance is good, if it contains an allegation of 'keeping intoxicating liquors with intent to sell the same, without adding that they were so kept in violation of law * * * The keeping of intoxicating liquors for sale, within the state, is unlawful of itself, unless the party thus keeping and offering the same to sell is specially authorized to sell the same. And such authority need not be negatived in the indictment. *State v. Beneke,* 9 Iowa, 203.' This indictment charges the actual sale, under Code, § 1540, and this stands in the place of keeping with intent to sell under section 1541. If it was an information for

selling, it would be necessary to state the name of the person to whom sold. *State v. Allen,* 32 Iowa, 491. But in an indictment for nuisance this is not necessary. If the question was *res integra,* the writer hereof might not hold as was done in *State. v. Collins, supra."*

We might continue to cite similar authorities at great length; but it seems to us that these are enough to support the legal principle announced. It is true that some cases can be found which announce a contrary doctrine; but we are satisfied that the cases cited are supported by correct principles. If the information must negative the fact that the liquors so conveyed were a lawful purchase, then this allegation would have to be proven by the state, or it would have to be treated as surplusage. If the state would have to prove that the liquors so conveyed were not a lawful purchase, the dispensary agent of every county in the state would have to be summoned as a witness for the state and would be forced to bring his record of sales with him. It would be practically impossible to secure all of these agents with their records of sales at any trial. To require this to be done would be to so construe the law as to defeat its enforcement. This rule we will not and cannot adopt. Section 5144 Wilson's Rev. & Ann. St. 1903, requires that our criminal statutes are to be liberally construed, with a view to promote their objects and in furtherance of justice. It is our plain duty to give full force and effect to this statute. On the other hand, if the liquors so conveyed were acquired by lawful purchase, this fact would be within the personal knowledge of the defendant, and he could easily prove it. If it is not necessary for the state to prove that the liquor so conveyed was not acquired by lawful purchase, why should the state be compelled to negative this fact in the information? So we hold that it is not necessary for an information or indictment for unlawfully transporting liquor from one place in this state to another place therein to allege that such liquors were not acquired by lawful purchase, and that the same rule of pleadings applies to all of the exceptions contained in section 1 of article 3 of the enforcement act, as well as to the

proviso at the close of the section. This conclusion may be accepted and acted upon by the trial courts of the state as final, so far as this court is concerned. There was therefore no error in the action of the trial court in refusing to sustain this ground of exception to the second count in the information.

No specific objection is made to the form or substance of the third count in the information. Therefore, standing by itself, it is unchallenged in this court.

In the brief of counsel for the defendant the following attack is made upon the fourth count in the information:

"The fourth count charges that plaintiff in error 'did sell, barter, give away, and otherwise furnish whisky, beer, ale, and wine unto B. F. Kane.' It will be readily seen from an examination of this count that plaintiff in error was charged with innumerable offenses, to wit, for selling whisky, for giving whisky, for bartering whisky, and for furnishing whisky, and for selling beer, for bartering beer, for furnishing beer, for giving beer, *ad infinitum*. From this fray-net charge could a defendant be informed of the specific charge against which he was compelled to defend? This is the reason for the well-settled rule for duplicity in counts. *Reagan v. State*, 28 Tex. App. 227, 12 S. W. 601, 19 Am. St. Rep. 833; *State v. Lund*, 49 Kan. 209, 30 Pac. 518."

Counsel are unfortunate in citing *Reagan v. State*, and *State v. Lund*, in support of their contention. In *Reagan v. State* the defendant was indicted for an assault with intent to commit rape and for an attempt to commit rape. These charges were presented in two separate counts. Judge Hurt, in rendering the opinion of the court, said: "There is no duplicity in the indictment." In this he was correct, as both counts in the indictment were based upon one and the same transaction. In *State v. Lund* the information contained but one count, in which it was charged that the defendant had sold intoxicating liquors, and also with keeping a place where intoxicating liquors were kept for sale, and were sold, and where persons were permitted to resort, etc., in violation of law. The court held:

"(2) Where an information in a criminal prosecution charged in one count two different offenses, it is error for the court to

refuse on motion of the defendant to require the state to set forth each offense charged in a separate count. (3) Where a defendant in a criminal prosecution is charged with the offense of selling intoxicating liquors in violation of law, and on the trial evidence is introduced tending to show several sales, and the defendant moves the court to require the state to select upon which sale as shown by the evidence it will rely for a conviction, which motion is overruled by the court, is held error."

It is seen from this that the decision of the court did not involve the question now presented. The fourth count only charged one offense, namely, that of selling liquor at a specified time to one Kane, and other persons whose names are unknown. This all related to one transaction, and charged but one offense. Under this count the sale of either or all of the different kinds of liquor mentioned in the count at the same time to one or more persons, as therein charged, would constitute but one offense. So the fourth count in the information, standing by itself, was not open to the objection of duplicity, and the court did not err in overruling the objection to it upon this ground.

Fourth. Upon the trial of this cause the state placed B. F. Kane upon the witness stand, and he testified as follows:

"On May 23, 1908, I was employed by Hunter L. Johnson, who at that time was deputy county attorney in and for Pottawatomie county, state of Oklahoma. Mr. Johnson asked me to walk around town and see if I could find any evidence against any persons for violating the law against the sale of intoxicating liquors. He gave me $1 with which to purchase intoxicating liquors if possible for the purpose in procuring the same to be used as evidence in prosecuting any one who was violating the law. I went down to No. 130 South Union street in Shawnee, Pottawatomie county, state of Oklahoma, and walked into the place where Mr. De Graff, the defendant herein, was running what appeared to be a restaurant. There were two rooms in this building, one being a front and the other being a back room. I went into the back room and there I saw Mr. De Graff, the defendant. He asked me what he could do for me, and I told him I wanted a small bottle of beer. He opened an ice box and took out a black bottle which looked like an ordinary black pint bottle of beer. It was labeled 'Adam's Special.' He pulled

out the cork, and I drank the contents of the bottle. It tasted a great deal like beer and looked like beer and was ice cold. I had drunk 'Adam's Special' before, however, and I recognized upon drinking it that it was not beer, but that it was 'Adam's Special.' I gave him 25 cents for it, and he put the money in his pocket."

Thereupon counsel for the defendant moved the court to strike out this testimony upon two grounds: (1) It is shown that the witness Kane was in the employment of the county attorney's office, and was furnished money by the county attorney to induce violations of the prohibition law, and was employed as a detective by the county attorney. (2) Because it does not show that Adam's Special was a drink prohibited by the laws or Constitution of Oklahoma, and it was not shown that said Adam's Special contained as much as one-half of 1 per cent. of alcohol, or was an intoxicating beverage. The court overruled the objections, and the defendant reserved an exception. Counsel cited the following authorities in support of their motion: *Wilcox v. People,* 17 Colo. App. 109, 67 Pac. 343; *People v. Braisled,* 13 Colo. App. 532, 58 Pac. 796; *Ford v. City of Denver,* 10 Colo. App. 500, 51 Pac. 1015; *Saunders v. People,* 38 Mich. 218; *Wright v. State,* 7 Tex. App. 574, 32 Am. Rep. 599; *Com. v. Graves,* 97 Mass. 114.

In *Ford v. City of Denver,* 10 Colo. App. 500, 51 Pac. 1015, the Supreme Court of Colorado did say:

"(2) It appears that the city was instrumental in procuring the sale of the liquor. Its purpose was to lay the foundation for a suit in which a judicial opinion as to what would constitute a violation of the ordinance might be procured. Apparently this purpose was unknown to the defendant's clerk when he made the sale, and, technically at least, his act was contrary to the ordinance; but the city is in no position to say that its ordinance was violated. It was as much responsible for the sale of the liquor as the defendant, and it will not be permitted to replenish its treasury from penalties incurred at its instigation. It cannot be heard to complain of an act the doing of which it solicited. It is entitled, in a proper case, to have its ordinance construed, and

questions concerning it determined; but it cannot manufacture a case for the purpose, or obtain the information it desires at the expense of a party for whose infraction of its ordinance it is responsible."

In *People v. Braisted,* 13 Colo. App.. 532, 58 Pac. 796, the same court said:

"(1)  A town cannot recover a penalty of a druggist for selling intoxicating liquor without a permit in violation of an ordinance of the town, where the price of liquor was furnished the buyer by the town's attorney, with instructions to attempt to purchase of the druggist, for the purpose of procuring a violation of the ordinance."

In *Wilcox v. People,* 17 Colo. App. 109, 67 Pac. 343, the same court said:

"The sale of liquors, in violation of a town ordinance, to one who purchases the liquor, at the instigation of the town, for the purpose of laying a foundation to prosecute the seller, does not authorize a conviction under the ordinance."

We cannot agree with the reasoning of the Colorado court. It would be applicable to the commission of that class of crimes in which the want of consent of the owner of property to its taking or destruction was a necessary element of the offense. In such cases the owner of the property taken or destroyed might, by his conduct in employing a detective to entrap a person suspected of crime, destroy the element of want of consent to such taking or destruction of his property and hence no crime would be committed by such taking or destruction. But can a man consent to an assault upon himself, and thereby free the perpetrator of such an assault from the legal responsibility? Can an officer consent to the commission of a crime and by so doing free the act of its criminal character? A private individual may be estopped in matters relating to his property by his own conduct. Is any one else estopped by his conduct unless such other person is privy thereto? Has a public officer such property rights in his office and in the enforcement of the law as by his conduct or consent to be able to estop the state in a prosecution of crime? If so,

whose liberty, property, character, or life would be safe? There can be but one answer to these questions, and that is emphatically, "No." The statements of these propositions amounts to their demonstration, and we deem it unnecessary to make any further argument or to cite authorities in support of our position, at least not until some reason is shown for a contrary view. As we have before said, this court will not approve and follow the decisions of any court, where not required by constitutional provisions to do so, unless we know and approve the reasons upon which it is based. We see nothing which renders the evidence in this case incompetent. Everybody knows that more devices and subterfuges are resorted to in attempting to violate prohibitory liquor laws, and to evade punishment therefor, than in all other departments of criminal law combined. Hence the necessity for the greatest vigilance and energy on the part of the officers in securing their enforcement. But at the same time, for the purpose of affecting the credibility of a detective and showing his interest in a case his employment as such detective may be shown, and he may be subjected to a rigid cross-examination upon this subject. It will then be for the jury to say as to whether they will believe his evidence or not. Our position is not only supported by reason, but also by the following authorities.

In *Saunders v. People,* 38 Mich. 218, cited by counsel for defendant:

"Saunders was convicted of breaking and entering by night a courtroom not connected with a dwelling and feloniously taking therefrom certain recognizances described as contracts in force and public records. Saunders was a lawyer, and it was in evidence that he had asked a policeman, Webb, to leave the door of the police room unlocked in order that he might get the O'Neil bonds, and that Webb, after consulting with his superior officer, consented, and then lay in wait with orders, and at 9 o'clock at night caught one Moylan removing the papers from a desk. Webb was asked on cross-examination if he had not once put in some false swearing for Saunders, and the question was ruled out."

The court refused to allow this kind of cross-examination.

Chief Justice Cooley, in passing upon the question as to the extent to which the cross-examination should have been permitted, said:

"Webb was an important and necessary witness in the case, and the conviction of the defendant must, so far as we understand from this record, have depended upon the belief of the jury in his evidence to conversation had with the defendant. That evidence was open to unfavorable inferences, and, without saying that such inferences should have been drawn, my Brethren think the recorder should have permitted very searching cross-examination under the circumstances. If he testified truly, he was apparently conniving at and assisting in the crime charged; and although he may have done this, as he says, not by way of enticing defendant into crime, but only by allowing him the opportunity he sought and requested, yet it placed him in an equivocal position, and the jury ought to have had the benefit of all the light that former dealings of the parties would have thrown upon the transaction; and although a question to the witness which implied rascality in the defendant himself as well as the witness seems extraordinary, yet it may have tested the credibility of the witness as well as any other; and his credibility in the same was quite as much involved as the defendant's guilt."

So the only question decided was as to the extent of the cross-examination. This cross-examination was being made for the purpose of affecting the credibility of the witness, and not for the purpose of rendering his evidence incompetent, so that case is not applicable to the question now before us.

In *Commonwealth v. Graves,* 97 Mass. 114, cited by counsel for the defendant, it appeared that upon the trial of the case the only witnesses for the government were two state deputy constables, and one Wotton, who acted in concert with them and under their direction. The evidence tended to show that on October 5, 1866, the three witnesses, under a preconcerted plan, met at the defendant's house in Southampton and remained there about an hour "to ascertain if the defendant would sell them liquor on their application for it; their purpose being to enable the officers of the government to use the facts in a prosecution against the defendant." No other sales were proved than those induced. The

deputies testified that "in obtaining convictions in this way they considered themselves acting in the line of their duty as public officers employed to suppress the liquor traffic, and drew the prescribed pay and fees and some other incidental expenses while performing this service, and certified their witness fees in all cases where they testified." The defendant requested the court to instruct the jury: That, as to such witnesses, the rule prescribed is that their evidence should be received with great distrust and caution; that the government cannot so far take advantage of the wrong of its officers as to demand a conviction for sales so produced; and that if the purchases were made under a preconcerted plan, and the calling for liquor at short intervals was in order to make proof of three sales, the different acts of delivery would not constitute separate sales for the purpose of convicting as a common seller. But the judge instructed that it was not necessary to pronounce opinion on the proper modes of obtaining evidence; but if it appeared that witnesses, whether public officers or otherwise, went to purchase liquor for the mere purpose of obtaining testimony to convict the seller, and not for the ordinary purpose of purchase of the article, the jury might examine the evidence with caution, and if there was any apparent craft or indirect contrivance in procuring testimony, they should examine it with the greatest care and caution, and that "if the whole evidence satisfied them that the defendant had made as many as three sales, separate and distinct from each other—that is, the delivery, sales, and purchase being separate and distinct from each other—it was sufficient." The jury returned a verdict of guilty, and the defendant alleged exceptions. The Supreme Court said:

"The real point which seems to have been made by the counsel for the defendant was that three sales were not proven, if it appeared that the liquor was purchased by the witnesses under a preconcerted plan in pursuance of which it was called for and delivered at short intervals, although the ordinary elements constituting three distinct sales were also proven; but such an instruction could not have been properly given. The ruling of the court on this point was responsive to the prayer submitted by the

counsel for the defendant, and submitted in proper form to the jury the question of fact whether three sales had been proven by the testimony to their satisfaction. *Commonwealth v. Kimball,* 7 Metc. (Mass.) 308; *Commonwealth v. Very,* 12 Gray (Mass.) 124."

The conviction was affirmed, so it is seen that this case is against the contention of counsel.

In *Wright v., State,* 7 Tex. App. 574, 32 Am. Rep. 599, cited by counsel for defendant, the court said:

"The charge further instructed the jury, in effect, that if the jury believed from the testimony that the witness Holden in his participation in the transaction was simply acting in the capacity of a detective, and without guilty intent, but solely to aid in ferreting out crime of which the defendant had been suspected, then he did not stand in the relation of one whose testimony required corroboration, but that he stood as any other witness, and subject to have his testimony weighed by the jury as that of any other witness in the case. We are of opinion that the court did not err in submitting that testimony to the jury, or in refusing a new trial on the ground that the verdict depended upon the testimony of this witness."

So it is seen that this case is against the contention of counsel.

Black on Intoxicating Liquors, § 439, says:

"Prosecutions under the liquor law are frequently sustained upon the evidence of 'spotters' or paid informers. The admissibility of such testimony is not questionable, and its weight and effect are entirely for the jury."

23 Cyc. p. 249, says:

"In prosecutions under the liquor law, the testimony of 'spotters,' detectives, or paid informers, is admissible."

In *Sears v. State,* 35 Tex. Cr. R. 442, 34 S. W. 124, the court said:

"The proposition contended for means that the purchaser (that is, the party who paid for the liquor) was a principal in making the sale of the same. In our view he could scarcely be said to have patricipated in the sale of the liquor with the same intent actuating the seller. He was no more an accomplice than

two persons would be who unlawfully, but willingly and voluntarily, fight together."

The contention was not sustained.

In *State v. Rollins*, 77 Me. 383, the court said:

"The employment of detectives is not in all cases discreditable. In many cases it is the only way of bringing the offenders to justice. It is as important that laws should be enforced as it is that they should be enacted. If it is commendable in the Legislature to enact laws prohibiting the sale of intoxicating liquors, or of diseased meat, or other unwholesome food, it is equally commendable on the part of the community to endeavor to enforce them."

We might fill a volume in quotations from the courts of other states to the same effect, but do not deem it necessary to do so, for the rule announced in the authorities from which we have quoted appears to our minds as being just and necessary for the enforcement of the law. We therefore hold the trial court did not err in refusing to strike out the evidence of the witness Kane upon the ground that he was a paid detective employed by the county attorney.

(2) In support of the second ground upon which the court was requested to exclude the evidence introduced, counsel in their brief say:

"It is not charged that 'Adam's Special' is intoxicating, that it contains any alcoholic properties; but the testimony establishes the fact that it was not beer. We believe and argue that the offense cannot be constituted without charging and proving the sale of an intoxicant. *State v. May*, 52 Kan. 53, 34 Pac. 407; *State v. Moulton*, 52 Kan. 69, 34 Pac. 412; *Intoxicating Liquor Cases*, 25 Kan. 751, 37 Am. Rep. 284."

In *State v. May*, 52 Kan. 53, 34 Pac. 407, the Kansas court said:

"If the article sold was beer, it was not incumbent on the state, in the first instance, to show that it was intoxicating; but the defendant had a right to show, if he could, that it was not intoxicating, if it was not beer, or any other liquor presumed to be intoxicating, it was incumbent on the state to show in the first instance the intoxicating qualities of the liquor sold."

The other cases cited are from the same court, and follow the May Case, so it is seen that under the Kansas statute the sale of intoxicating liquors is alone prohibited. This is not the case under the Oklahoma statute. Section 1 of article 3 of our enforcement act prohibits the sale of any imitation or substitute for malt liquors which contain as much as one-half of 1 per centum of alcohol, measured by volume, and which is capable of being used as a beverage, so the court did not err in overruling the objection to this testimony upon the objection made. In the case of *Markinson v. State, ante,* p. 323, 101 Pac. 354, in an opinion by Judge Doyle, this court did hold that in prosecutions for the sale of substitutes for liquor, which sale occurred before the passage of the enforcement act, and which was based alone upon the Enabling Act, copied into our Constitution, it was necessary to prove that such substitutes were intoxicating. This decision was based alone upon the language of our Constitution and has no application to sales of such substitutes sold after the passage of the enforcement act.

In order that no one may misunderstand our position, and to prevent mistakes in the future, we suggest to county attorneys that the sale of substitutes of prohibited liquors, as forbidden and made criminal by section 1 of article 3 of the enforcement act, constitutes a new and distinct offense, and that in prosecutions based alone upon the sale of such substitutes it may be well questioned if the sale of such substitutes would support an allegation of the sale of the originals. In such prosecutions the wise and safe course to pursue would be to set out the kind of substitute sold, and bring it within the language of the statute. As this objection was not made by counsel for the defendant, it will not be finally passed upon now. We make this suggestion for the purpose of saving possible trouble in the future.

The witness Kane further testified as follows:

"While I was in the back room I asked Mr. De Graff if that was his place of business, and he said that it was, that he had both rooms rented. In the back room, and close to the refrige-

rator, I saw a table with a small bowl of salt thereon. I saw about a dozen glasses about like the ordinary whisky glasses, and I saw about a dozen glasses which looked like ordinary beer glasses. I saw about a dozen corks on the floor like those that come out of the ordinary beer bottles, and when Mr. De Graff opened the refrigerator I saw eight other bottles which looked like the bottle of Adam's Special that I bought. I saw three other pint bottles like the bottle of whisky that I asked Mr. De Graff to wrap up for me. A little while after I had gone out, I went into the back yard behind this building, and in a box which was covered by several other boxes I found 18 bottles of beer which was stamped 'Budweiser Beer.' I do not know to whom it belonged; but it was on the same lot on which De Graff was doing his business, and about 30 feet back of the back door of the building. On the day before I went into this place, I watched a lot of people going in and coming out. I saw four men go in there at one time and go into the back room. They stayed in there about 10 minutes. When they came out at the front door, where I was standing, I could smell intoxicating liquors on their breath. At another time during that day I saw a man coming out of that place who was staggering and who appeared to be drunk."

The defendant repeatedly moved the court to exclude this testimony upon the ground that it was immaterial, incompetent, and irrelevant. These motions were overruled, and the defendant reserved exceptions. Every word of this testimony was relevant to the issues presented in the information, and there was no error in the action of the court in not sustaining the motion to exclude it. On account of the errors herein discussed, the case is reversed and remanded, with directions to the county judge to set aside the judgment of conviction, and to direct the county attorney to have the information properly verified, and to select the count in the information upon which he will proceed if he desires a second trial, and dismiss the other counts. If this is not done, then the motion to set aside the information upon the ground that it is not properly verified, and that it charges more than one offense, must be sustained.

Case reversed and remanded.

DOYLE and OWEN, JUDGES, concur.