Lanny Joseph MICHAUD, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–16359.

Court of Criminal Appeals of Oklahoma.

Jan. 24, 1973.

Rehearing Denied Feb. 23, 1973.

Jerry Maddux, Bartlesville, for appellant.

Larry Derryberry, Atty. Gen., Paul Crowe, Asst. Atty. Gen., for appellee.

## OPINION

BRETT, Judge.

This is an appeal from an order revoking a suspended sentence. 22 O.S.1971, § 991b.

Appellant, Lanny Joseph Michaud, hereinafter referred to as defendant, was convicted on a plea of guilty in the District Court of Washington County, Case No. CRF 69–353, of possession of marihuana. Defendant was sentenced on October 21, 1969, to five years imprisonment, with the sentence suspended "under the supervision of the Department of Corrections of the State of Oklahoma, such suspension to continue during good behavior." The court imposed no other terms or conditions in suspending the sentence.

On July 31, 1970, an application to revoke the suspended sentence was filed and defendant jailed thereon. The application alleged that defendant had violated the conditions of his probation by maintaining

a residence where "persons were allowed to congregate for the purpose of using narcotic drugs, marihuana, barbiturate, and stimulant drugs." On August 18, 1970, counsel was appointed to represent defendant. With the denial of defendant's motions for continuance, the revocation hearing was held on August 27, 1970.

At the hearing, in support of a motion to suppress, defendant called Officer Pranger of the Bartlesville Police Department. Officer Pranger testified that on the night of July 30, 1970, at 10:10 P.M., he went to 1332 So. Armstrong in Bartlesville on the report of a loud party in progress. The officer found four persons in the living room of the residence. The officer was advised by a neighbor that there were others on the roof of the residence. Officer Pranger then found a ladder and climbed up to the roof where he found some people, including defendant, sitting on mattresses, watching T.V. These persons were ordered off the roof. After the persons had left the roof Officer Pranger, in searching the roof, pulled up one of the mattresses where he found a small bag. According to the officer, he was "just looking to see what was going on up there." In the bag the officer found a medicine bottle with a prescription label bearing the name Gary Johnson. The officer saw some tablets in this bottle and "supposed they were LSD" as they "were tablets that I had seen described before." The officer made no arrests and left the premises.

Officer Pranger thereafter signed an affidavit for a search warrant for this residence, alleging as grounds that, in answering a disturbance call at this address, he had observed a quantity of LSD, that being the tablets he found under the mattress. On this application a search warrant was issued. The search thereon yielded some marihuana seeds and residue, and some unknown tablets. This seizure formed the basis for the revocation.

Defendant contended the officer was engaged in an unlawful search when he uncovered the tablets which rendered the search warrant based thereon void. The judge denied the motion to suppress for purposes of the revocation hearing, but sustained the motion finding that the search was unconstitutional in the new charge filed against defendant as a result of this search in State v. Michaud, CRF 70–483, Washington County. The distinction apparently being that a person does not enjoy the same rights in a revocation proceeding as he does in a trial.

As to the search of defendant's residence, we find, as did the District Court, that it was unconstitutional. The familiar rule in this jurisdiction was restated in Story v. State, Okl.Cr., 452 P.2d 822, 825–826 (1969):

"Before an officer is authorized to search a private residence occupied as such, or the curtilage thereof, he must have: (1) A valid search warrant issued by a magistrate having jurisdiction based upon an affidavit sufficient on its face to show probable cause; (2) Or must arrest the occupant of the premises with or without a warrant when a felony has in fact been committed, and he has reasonable cause for believing the occupant has committed it; (3) Or the occupant must be arrested by the officer for a public offense committed or attempted in the presence of the officer; (4) Or the occupant must voluntarily consent to the search."

Officer Pranger had no search warrant when he went to defendant's residence pursuant to an anonymous telephone call of a disturbance. The officer did not testify as to any disturbance or other offenses committed in his presence while he was there. No arrests were made at the scene. There was no request for consent to search, nor was consent given. The tablets found by Officer Pranger in a bottle, in a bag, under a mattress, were not in clear view. There was no justification for this search and it was clearly unlawful. A search unlawful at its inception cannot be made legal by what it uncovers.

Furthermore, the second search made with a warrant is unlawful since it was based on knowledge gained from the officer's unlawful, warrantless search. The second search and seizure cannot constitutionally rest upon a warrant issued on the basis of illegally obtained evidence. The essence of the constitutional prohibition against unreasonable search and seizure is not merely that "evidence so acquired shall not be used before a court but that it shall not be used at all." Wong Sun v. United States, 371 U.S. 471, 485, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

In Simmons v. State, Okl.Cr., 277 P.2d 196, 197 (1954), this Court held:

"A search and seizure illegal in its inception cannot become legalized by what it brings to light; its legality must be determined by the situation as disclosed before the search was made.

"Evidence which is inadmissible because obtained by an illegal search and seizure means that such evidence may not only not be used in the trial of a case, but shall not be used at all. Evidence obtained solely by reason of leads developed from an illegal search is also inadmissible.'

Accordingly, the search and seizure was unconstitutional.

Now we consider whether evidence obtained by an unconstitutional search and seizure is competent evidence on which to base the revocation of a suspended sentence. By statute, when a sentence has been suspended by a court, "the suspended sentence of said person may not be revoked, for any cause unless competent evidence justifying the revocation of said suspended sentence is presented to the Court." 22 O.S.1971, § 991b. It is true that a "hearing on revocation is not a criminal trial" and not governed by the full scope of trial rules and procedure. In re Collyar, Okl.Cr., 476 P.2d 354 (1970). Carson v. State, Okl.Cr., 493 P.2d 1397 (1972). However, we have consistently held, as indeed we must by virtue of Section 991b, that a revocation may only be had upon competent evidence. Brown v. State, Okl. Cr., 494 P.2d 344 (1972) In re Collyar, supra.

Evidence obtained through an unlawful search and seizure has been termed "incompetent evidence" by this Court. Story v. State, Okl.Cr., 258 P.2d 706 (1953). In Mapp v. Ohio, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961), the United States Supreme Court held that "all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court." There is no qualification as to the nature of the state court proceeding. Constitutionally, such evidence "shall not be used at all." Wong Sun v. United States, supra, 371 U.S. at page 485, 83 S.Ct. at page 416. This Court stated that this "constitutional provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used in the trial of a case, but that it shall not be used at all." Simmons v. State, supra, 277 P.2d at page 198.

If such evidence is "inadmissible in a state court" and "it shall not be used at all," there is no legal justification for its use and admission in court for a revocation hearing. Evidence obtained through an unconstitutional search and seizure is incompetent to prove any fact in court, whether the proceeding be a trial or revocation hearing. Such evidence is to be excluded. "The purpose of the exclusionary rule 'is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it.'" Mapp v. Ohio, supra, 367 U.S. at page 656, 81 S.Ct. at page 1692. If evidence from an unreasonable search and seizure were admissible in court at a revocation hearing, it would provide an incentive to disregard the constitutional guaranty, thus eroding the purpose of the exclusionary rule.

The exclusion of evidence obtained through an unconstitutional search cannot be considered as just another rule of procedure; rather, it is a fundamental, consti-

tutional right. It is significant when the evidence "was obtained in violation of a constitutional prohibition, not merely a rule of procedure. Moreover, the exclusionary rule with which we are concerned is a part of the constitutional right, not merely a rule of evidence adopted in the exercise of a supervisory power." Verdugo v. United States, 402 F.2d 599, 610–611 (9th Cir. 1968). Accordingly, the distinction between a criminal trial and a revocation hearing does not abrogate the Fourth Amendment.

We therefore find that the revocation of defendant's suspended sentence was based on incompetent evidence in violation of 22 O.S.1971, § 991b, which requires the order of revocation be reversed and remanded.

BUSSEY, J., concurs.

BLISS, P. J., dissents.

BLISS, Presiding Judge (respectfully dissenting):

The revocation of suspended sentence should be upheld. The record reveals competent evidence, absent the "fruits" of the illegal search, such as to warrant revocation.