Roy L. BOWMAN, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F-77-132.

Court of Criminal Appeals of Oklahoma.

Oct. 25, 1978.

Gerald F. Neuwirth, Lawton, for appellant.

Larry Derryberry, Atty. Gen., Ross N. Lillard, III, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Presiding Judge:

Appellant, Roy L. Bowman, hereinafter referred to as defendant, was charged by information with the crime of Murder in the Second Degree, in violation of 21 O.S. Supp.1973, § 701.2. The defendant was tried before a jury in the Comanche County District Court, Case No. CRF–76–202, before the Honorable Jack Brock, District Judge. The defendant was convicted and sentenced to a term of imprisonment of not less than ten (10) years nor more than life, pursuant to 21 O.S.Supp.1973, § 701.4. From said judgment and sentence defendant has perfected this appeal.

A body was discovered by fishermen at about 4:15 p. m. on February 16, 1976, on the shoreline of Rush Lake in the Wichita Mountains Wildlife Refuge, in Comanche County, Oklahoma. The body was later identified as Michael J. Perkins, a private in the United States Army, stationed at Ft. Sill, Oklahoma. The medical examiner testified that death, in his opinion, was due to multiple blows to the head inflicted by a rod-shaped instrument.

The defendant and one Jessie Brown were later arrested and charged with the murder of Michael J. Perkins. A search of the defendant's car uncovered a tire tool in his trunk. A police officer testified that the tire tool was clean, while all other items in the trunk had a film of dust on them.

Renee Gallaway testified that on the night of February 15, 1976, the defendant and Perkins got into a fight near the Play Pen Lounge in Lawton, Oklahoma. The fight concerned the defendant's contention that Perkins was a narcotics informer. The defendant ordered Perkins into the defendant's car, and the two of them, with Gallaway and Jessie Brown, drove to Rush Lake. The witness further testified that the defendant forced Perkins out of the car, and that after the defendant and Brown beat him for a while near the shoreline, the defendant returned to the car and took a metal object from the trunk. The witness said she saw the defendant repeatedly swing the metal object downward, with the first four swings being followed by screams from Perkins. The defendant and Brown then returned to the car, the defendant wiping the metal object as he walked. The three then returned to Lawton.

The defendant admitted having had a scuffle with Perkins near the Play Pen Lounge in Lawton, but claimed that Perkins left in a blue Volkswagen automobile. He stated that he left with Jeannie Hinton and was asleep at Brown's apartment at the time of Perkins' death. The defendant testified that he did not leave Brown's apartment until after 10:00 p. m., when he went to another bar.

In his first assignment of error, the defendant asserts that he was denied the right to confront the witnesses against him. Prior to trial, the State filed a motion in limine to prevent defense counsel from inquiring into the juvenile record of the State's key witness, Renee Gallaway, who was a juvenile at the time of the trial. This request was granted in an order which states in pertinent part:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the above named Defendant, Defendant's counsel, and Defendant's witnesses, and each of them, are hereby ordered not to mention, refer to, interrogate concerning, argue to, or attempt to convey to the jury in any manner, either directly or indirectly, any pleading, testimony, remarks, questions, exhibits, opening arguments or closing arguments, designed to inform the jury of any fact concerning evidence, if any, relating to prior arrests and/or adjudications had in the Juvenile Court regarding Renee' Gallaway, or any juvenile proceedings or records of any nature referring to said Renee' Gallaway, *without first obtaining permission of this Court outside the presence and hearing of the jury.*" (Emphasis added)

Immediately prior to the testimony of this witness, the following exchange occurred:

"MR. NEUWIRTH: (Out of the presence of the jury) We would enter an objection to the testimony by this witness for the reason that a previous order has been made by the court prohibiting us from cross examining this witness regarding her juvenile adjudications. We feel this is depravation (sic) of the Defendant's constitutional right to confront the witness, therefore we would object to any testimony by her.

"THE COURT: Overruled with exceptions."

It has long been the rule in this state that the juvenile record of any child shall receive special protection and shall not be disclosed in any civil, criminal or other cause or proceeding except in subsequent cases before the juvenile court against the same child. Title 10 O.S.Supp.1977, § 1127(a). Also see, *Young v. State,* Okl.Cr., 553 P.2d 192 (1976); *Lauen v. State,* Okl.Cr., 515 P.2d 578 (1973).

Furthermore, in *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the United States Supreme Court recognized, without challenge, the interest a state might have in protecting the anonymity of juvenile offenders. However, the Supreme Court went on to rule in *Davis v. Alaska,* supra, that this policy must be limited insofar as it conflicts with the paramount interest of a defendant to confront the witnesses against him. The Supreme Court distinguished between a general attack on the credibility of a witness by the introduction of prior criminal convictions of a witness, per se, and a more particular attack directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. They found that cross-examination concerning the partiality of a witness is a necessary element of a defendant's right to confrontation, and as such is paramount to the policy of maintaining the anonymity of a juvenile's record. However, in the instant case there was no indication as to whether the defendant wanted to cross-examine the witness in question concerning her juvenile record merely for the purpose of a general attack upon her credibility by showing prior adjudications, or more specifically for the purpose of showing a possibility of partiality. Therefore, it was unclear whether the holding in *Davis v. Alaska,* supra, was applicable in this case.

An evidentiary hearing has since been held in this Court wherein counsel for the

defendant admitted that he had no personal knowledge of any past juvenile record of this witness. Furthermore, affidavits have been received by this Court from Renee Gallaway, her mother, the custodian of the records for the Lawton Police Department, the District Court Clerk for Comanche County, and the Director of the Juvenile Bureau of Comanche County, Oklahoma, wherein each affiant states that Renee Gallaway has no juvenile record.

First, we note that the defendant failed to comply with the order of the court as emphasized above. The order in limine by the trial court did not strictly rule out evidence of the juvenile record, but merely required that permission be obtained from the court outside the hearing of the jury. Next, in view of the sworn affidavits that Renee Gallaway had no juvenile record, the defendant certainly has suffered no prejudice. Finally, we observe that when a motion in limine is sustained the party seeking to introduce the evidence must at trial but out of the hearing of the jury, make an offer of proof as to what the proper testimony would be, in order to give the trial court an opportunity to make a final ruling with respect to it. *Teegarden v. State,* Okl.Cr., 563 P.2d 660 (1977). For the foregoing reasons, the defendant's first assignment of error is without merit.

The defendant's second assignment of error is that the trial court erred in refusing to grant his motion requesting the court to order the State's witness, Renee Gallaway, to cooperate with the defendant and his counsel in allowing counsel to interview her. The defendant contends that this hampered his ability to adequately prepare for trial and, in effect, deprived him of due process of law.

Defendant admits that he can find no authority in support of this motion. In fact, the authority is to the contrary. In *Broadway v. State,* Okl.Cr., 494 P.2d 331 (1972), while we recognized that the defense should not be deprived of an opportunity to interview witnesses for the prosecution, we also recognized that such is subject to the witness' consent to said interview. See, 23

C.J.S. Criminal Law § 958, for a general discussion of this issue.

The defendant cites *Kinney v. Lenon,* 425 F.2d 209 (9th Cir. 1970), for the general proposition that due process requires that the defense have an opportunity to contact and screen for potential witnesses. However, that case in no way holds or implies that witnesses may be compelled to confer with counsel for the defense outside of court. In fact, in *Byrnes v. United States,* 327 F.2d 825 (9th Cir. 1964), the Ninth Circuit Court of Appeals ruled that while it is true that any defendant has the right to attempt to interview any witnesses he desires, it is also true that any witness has the right to refuse to be interviewed.

Finally, while it is true that as an investigative tool the District Attorney or any peace officer has the authority under 22 O.S.1971, § 749, to take the sworn statement of any person having knowledge of a criminal offense, this is offset by the right of the defendant to have a copy of such sworn statements. Therefore, the defendant's second assignment of error is found to be without merit.

The defendant's third assignment of error is that the trial court set an unreasonable amount of bail for the defendant prior to trial, thereby effectively denying him the right to bail. A review of the record reveals that bail was initially set at $25,000, but upon motion by the prosecutor was raised by the court to $50,000.

The setting of bail is within the sound discretion of the trial court, and it must clearly appear that the trial court has abused its discretion to the extent that the defendant has been denied his constitutional rights before this Court will overturn the trial court's decision. *Application of Pulliam,* Okl.Cr., 356 P.2d 755 (1960). In the third paragraph of the Syllabus by this Court in *Application of Owens,* Okl.Cr., 349 P.2d 766 (1960), we stated:

"Purpose of appearance bond is to guarantee that accused will be available at such times as court may direct, and since bond should never be used for purpose of

punishing the accused, sole guide in fixing amount thereof should be to cause accused's appearance to answer to the charge against him."

██ There are various factors which may be considered in attempting to determine the likelihood of an accused to appear, and therefore set adequate bail. One factor is the maximum punishment possible for the offense charged, since for the purpose of setting bail the defendant must be presumed gu'lty. *Application of Pulliam,* supra. The consideration of this factor is not for the purpose of punishment but merely the recognition that the greater the potential punishment, the greater the tendency for a defendant to be reluctant to appear. A potential sentence of ten years to life must be viewed as a rather severe penalty.

Another factor to consider is the defendant's ties with the jurisdiction. *Creech v. State,* Okl.Cr., 500 P.2d 861 (1972). Again, this is not an attempt to punish the defendant for indigency or lack of connections with the jurisdiction, but it is an obvious reality that the greater ties one has with the jurisdiction, the more reluctant one is likely to be to leave said jurisdiction. In the instant case, the defendant had no apparent ties with the State of Oklahoma other than being stationed here in the military service. Furthermore, evidence unrebutted by the defendant was placed before the court that the defendant's military commitment was soon to terminate.

Finally, any other factors which might indicate the defendant's willingness to remain in the jurisdiction and appear as required may be considered. In the instant case at the hearing concerning bail, evidence was introduced which indicated that the defendant made an attempt, albeit futile, to escape from incarceration.

██ Therefore, under all the facts and circumstances in this case we do not feel that the trial court abused its discretion in setting bail in an amount appropriate to guarantee the defendant's appearance in court. This assignment of error is without merit.

██ The defendant's fourth assignment of error is that the trial court's failure to grant the defendant's request for a continuance of the trial, as requested by the defendant in a preliminary motion and at the date of trial, denied the defendant the right of a fair trial, and prevented him from being able to properly prepare for trial. It is well settled that a motion for continuance is addressed to the sound discretion of the trial judge, and that the ruling will not be disturbed unless there is a clear showing of abuse of that discretion. *Kirk v. State,* Okl.Cr., 555 P.2d 85 (1976), and *Gossett v. State,* Okl.Cr., 553 P.2d 215 (1976). The defendant sets forth two propositions in support of his contention that the trial court abused that discretion. The first is that the defendant's counsel only had three months from the time he was appointed as counsel to the time of trial, which was too short a period of time in which to prepare for a trial of this type. This Court, in *Webb v. State,* Okl.Cr., 538 P.2d 1054 (1975), held that where a defendant's counsel received less than three months to prepare for trial on a sex offense, the defendant was still not denied a fair trial due to insufficient time for counsel to prepare for trial. In the case at hand, there were no exceptional circumstances which would have necessitated the granting of more time. Thus, we cannot say that the trial court abused its discretion in denying the motion for a continuance when the defendant's counsel had three months to prepare, and when there were no exceptional circumstances calling for the granting of more time.

██ The second proposition under this assignment is that the motion for a continuance should have been granted because the transcript of the preliminary hearing was available only 14 days before the trial. In *Blackwood v. State,* Okl.Cr., 525 P.2d 1369 (1974), the defendant was charged with the offense of robbery with firearms after prior conviction of a felony. The defendant's counsel did not receive a copy of the transcript of the preliminary hearing until five days before trial, only three days of which

were working days. The court there found that there was ample time to review the transcript, and the trial court did not err in refusing to grant a continuance. Similarly, we find that in the case at hand there was ample time to prepare for trial when the transcript of the preliminary hearing was furnished 14 days before trial. Therefore, we find that the trial court did not abuse its discretion in refusing to grant the motion for continuance, and the fourth assignment of error is without merit.

 The defendant's fifth assignment of error is that the taped and transcribed statements of the defendant, made immediately after his arrest, should have been held inadmissible. Shortly after the defendant was arrested he was taken to the Comanche County Sheriff's Office where he was questioned by Bill Banks, an investigator for the Sheriff's Office. At least part of the interview was taped. After the defendant testified at trial, the State recalled Bill Banks. During the examination of Banks, the tape was played for the jury.

It should be noted that the defendant does not contend that such statements were coerced, but just that the defendant had asked to stop talking and had requested an attorney. The defendant contends that these facts make it an illegally obtained statement, and thus inadmissible. The purpose of the State in introducing such statements was to show inconsistent prior statements made by the defendant, and the trial court allowed them as such. In *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), the state, in the prosecution of one accused of selling heroin to an undercover police officer, used the written statements of the defendant in the impeachment of the defendant's testimony, although these statements had been obtained without warning to the defendant of his right to counsel. The court there held that although the decision of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), would prevent the prosecution from making its case with the statements, "the shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." *Harris v. New York,* supra, 401 U.S. at 226, 91 S.Ct. at 646. Accordingly, without deciding if such statements were illegally obtained, we find that the statements were admissible because they were used for purposes of impeaching the defendant. The defendant's fifth assignment of error is dismissed as being without merit.

The next assignment of error is that State's Exhibits Nos. 5 through 10 should not have been admitted. The defendant first alleges that there was a void in the chain of custody in State's Exhibits Nos. 5 and 6, a cane and a jacket. The transcript shows that the crime was committed on February 15, 1976, and that the body was discovered on February 16. The transcript also shows that State's Exhibits Nos. 5 and 6 were obtained on February 17 from Dewayne Chapman by Deputy Banks, that Deputy Banks gave them to Deputy Dewey on February 17, and that Deputy Dewey delivered them to the Oklahoma State Bureau of Investigation chemist, Albert Gray, on February 18.

 The defendant contends that *Faulkenberry v. State,* Okl.Cr., 551 P.2d 271 (1976), is applicable to the present situation. *Faulkenberry* held that an unexplained ten day delay in time from the receipt of evidence to delivery to the lab constituted an absence of a vital link in the chain of custody. In the case at hand, there was at most a one day delay from the time Deputy Dewey obtained the two pieces of evidence until he delivered them to the OSBI Laboratory. We think the facts—one day as compared with ten days—differ sufficiently to distinguish the two cases.

 The defendant also contends that there was a break in the chain of custody of State's Exhibits Nos. 5 through 9 between the OSBI chemists Gray and Caveny. He avers that there was a void from the time Gray received the evidence until Caveny tested it, which should have rendered the evidence inadmissible. This was complicated by the fact that Gray did not testify at trial. This situation is analogous to the fact

situation in *Trantham v. State,* Okl.Cr., 508 P.2d 1104, 1107 (1973), wherein this Court cited the California case of *Wagner v. Osborn,* 225 Cal.App.2d 36, 37 Cal.Rptr. 27 (1964), as follows:

" 'It is true that the party offering demonstrative evidence must show to the satisfaction of the trial court that in reasonable certainty there had been no alteration of or tampering with the exhibit. . . . This burden, however, is not so absolute that all possibility of alteration must be negated. Even where there may be the barest speculation that tampering could have occurred, it is proper to admit the evidence and let what doubt there may be go to its weight. . . . ' (Citations omitted)

"The above authority and the instant case are identical in that in establishing the chain of custody, the recipient of the evidence at the chemist's office did not testify at trial to his possession. Like the California court, we find the evidence of chain of custody in the instant case is sufficient to render the evidence admissible. The evidence of delivery to the chemist's office is uncontroverted. . . ." (Citations omitted)

We feel the uncontroverted evidence of the testimony of delivery of State's Exhibits Nos. 5 through 9 to Gray and the testimony of Caveny that he found the items in his evidence depository is sufficient to bring this case within the rule in *Trantham.*

▉ The defendant next contends under this assignment that State's Exhibits Nos. 5 through 9 were admitted in error because they were irrelevant and immaterial, and that the sole purpose in offering them into evidence was to inflame the jury against the defendant. The determination of the relevancy of evidence is within the sound discretion of the court. *Young v. Anderson,* 513 F.2d 969 (10th Cir. 1975). The evidence should be admitted if it reasonably tends to prove material facts in issue. *Cornelius v. State,* Okl.Cr., 438 P.2d 295 (1968). Concerning State's Exhibits Nos. 5 and 6, the cane and the jacket, it is significant that the State's witness testified

that she saw the defendant at Rush Lake on the night of the crime, beating the deceased with the cane, and that the defendant was wearing the jacket during the commission of the crime. Furthermore, the defendant admitted to having in his possession, on the night in question, the cane and a jacket belonging to Dewayne Chapman, which was similar to State's Exhibit No. 6, although he was unable, or unwilling, to identify State's Exhibit No. 6 as being the same jacket. As to the possible relevancy of State's Exhibits Nos. 7 through 9, these being grass, a rock, and the victim's shirt, witness Banks testified that he collected these items in an area where the body was found. Tests of the blood found on these items matched that found on Exhibits 5 and 6, and the blood type was classified as Group A, as distinguished from the defendant's type O. Furthermore, even if we were to accept the proposition that any or all of State's Exhibits 5 through 9 were inadmissible, we find that in view of the overwhelming evidence against the defendant in this case it would constitute no more than harmless error. Title 20 O.S.1971, § 3001.

▉ The last proposition in this assignment of error is that State's Exhibit No. 10, the tire tool, was improperly admitted for the reason that it was irrelevant, immaterial and too remote. The defendant bases this contention on the assertions that there was no specific testimony as to the size of the object used to inflict the deceased's wounds, and that the tire tool did not meet the eyewitness' description of the weapon used by the defendant. However, a review of the record shows that Dr. Robert Dix, the pathologist, testified that the instrument used to inflict the wounds was rod-shaped, and that the size and configurations of the fatal injuries did not rule out the tire tool as the murder weapon. Furthermore, tests indicated that a smear found on this exhibit was blood, although the sample was too small to allow tests to determine whether or not the blood was that of a human being. Also, there was testimony that when the tire tool was taken from the

defendant's trunk it had no dust on its surface, whereas everything else in the trunk was covered with a film of dust.

Finally, although the State's eyewitness described the murder weapon as being approximately one foot long with what appeared to be a chain hanging from it, this witness added that due to inadequate lighting, she was unable to determine the exact nature of the murder weapon. It is also significant to note that this eyewitness testified that the murder weapon had been obtained from the trunk of the car. When the testimony concerning the murder weapon and that concerning State's Exhibit No. 10 is viewed as a whole, it is not sufficiently apparent that State's Exhibit No. 10 was either irrelevant, immaterial, or too remote to merit a finding that the trial court abused its discretion in admitting this evidence.

In his last assignment of error the defendant asserts that a new trial should have been granted upon presentation of newly discovered evidence. The co-defendant in this case, Jessie Brown, was sentenced to ten (10) to forty (40) years in the Oklahoma State penitentiary after plea bargaining. In March of 1977, he executed an affidavit alleging that the crime for which the defendant had been convicted had been committed by himself and the State's eyewitness, Renee Gallaway. The defendant filed a motion for a new trial upon newly discovered evidence which the District Court overruled after a hearing.

At the hearing on the defendant's motion for a new trial, the testimony of co-defendant Brown differed from that of the defendant and his witness in the following manner. Brown testified that he, the defendant, Michael Perkins, and Renee Gallaway left the Play Pen Lounge together but he dropped the defendant off at his home where the defendant went to sleep, or passed out, on the couch. Brown stated that he and Renee Gallaway then took Perkins to the lake where he was murdered. Brown further asserted that he fabricated the story he told the District Attorney, implicating the defendant, in the hope of getting a "good deal" from the District Attorney.

 It is a well established principle of law in Oklahoma that:

"Whether or not a motion for new trial on the ground of newly discovered evidence will be granted is clearly within the discretion of the trial judge and this court will not reverse the trial court's decision unless there is an abuse of that discretion. . . . " (Citations omitted) *Garcia v. State,* Okl.Cr., 545 P.2d 1295, 1297 (1976).

This Court has set out certain circumstances in which a refusal of a motion for new trial based upon newly discovered evidence will be within the discretion of the trial judge. In *Williams v. State,* Okl.Cr., 542 P.2d 554, 587 (1975), this Court cited the second paragraph of the Syllabus to *Williams v. State,* 92 Okl.Cr. 70, 220 P.2d 836 (1950), that:

" 'A new trial should not be granted upon the ground of newly discovered evidence where the same is merely cumulative. *It must appear that, if the newly discovered evidence had been introduced in the trial, there is a reasonable probability that a different result would have been reached.'* " (Emphasis added)

 We note that Brown's testimony would, at best, have been of extremely questionable credibility, especially in view of the testimony put on by the defense, including testimony by the defendant. Certainly, we cannot presume for the purposes of this appeal that the testimony of the defendant and Jeannie Hinton would have been any different had this witness testified. A review of the testimony offered by Jessie Brown, when compared with that of the defense witnesses at trial, not to mention the testimony of the witnesses for the State, raises many blatant inconsistencies. In fact, at no time during trial did the defendant even intimate that the facts were such as testified to by Jessie Brown at the hearing for a new trial. Furthermore, it would be setting a dangerous precedent to allow a defendant a new trial to try out a new version of the facts every time he could find a witness willing to lend him support.

Therefore, we find that the trial court did not abuse its discretion in denying a new trial.

For the above and foregoing reasons the judgment and sentence of the trial court is, hereby, AFFIRMED.

CORNISH, J., concurs in results.

BRETT, J., concurs.