George W. RICHARDSON, a/k/a
Jody Richardson, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. 0–91–1184.

Court of Criminal Appeals of Oklahoma.

Nov. 10, 1992.

### ACCELERATED DOCKET ORDER

On August 15, 1988, appellant pled guilty in Case No. CRF–88–98 to Unlawful Possession of a Controlled Dangerous Substance, and received a five (5) year suspended sentence. Several years later on February 3, 1991, a search warrant was executed at appellant's residence and contraband was discovered. Appellant was then charged with Unlawful Possession of a Controlled Dangerous Substance With Intent to Distribute, and Unlawful Possession of Paraphernalia, in Case No. CRF–91–23. On the basis of these charges, appellee filed on February 11, 1991, an Application to Revoke [appellant's] Suspended Sentence in Case No. CRF–88–98. Then, on April 25, 1991, appellee filed a Motion to Dismiss Case No. CRF–91–23, on the basis that the search warrant which led to the discovery of the incriminating evidence in that case was invalid.

Appellant filed a Motion to Suppress on April 29, 1991. He argued that the contraband obtained pursuant to the invalid search warrant could not be introduced against him at the hearing on appellee's Amended Application to Revoke Suspended Sentence in Case No. CRF–88–98. At the June 20, 1991, hearing, the trial court overruled appellant's Motion to Suppress, and

granted appellee's Amended Application to Revoke Suspended Sentence. The trial court found that the search warrant was in fact invalid. However, it concluded that the fruits of that warrant were admissible in the revocation proceeding, because the officers' entry was made upon the good faith belief that the warrant was valid. From this judgment and sentence, appellant perfected his appeal to this Court.

■ Pursuant to the *Rules of the Oklahoma Court of Criminal Appeals*, Rule 11.2(a)(2), 22 O.S.Supp.1990, Ch. 18, App., this appeal was automatically assigned to the Accelerated Docket of this Court. The sole proposition of error presented was whether evidence police seized pursuant to an invalid warrant and in violation of appellant's Fourth Amendment rights, was admissible in his revocation proceeding to prove that he violated a condition of his probation. Following oral argument presented on October 15, 1992, this Court ruled, in a three (3) to two (2) vote, that, absent egregious police misconduct, evidence illegally seized from a probationer is not barred by the exclusionary rule from revocation proceedings.

This Court acknowledges that this holding represents a departure from our previous decisions in *Chambers v. State*, 649 P.2d 795, 797 (Okl.Cr.1982), and *Michaud v. State*, 505 P.2d 1399, 1402-03 (Okl.Cr. 1973). In those cases, we held that the exclusionary rule does apply to bar evidence—seized in violation of the Fourth Amendment—from revocation proceedings. We recognized in *Michaud* that a revocation proceeding is not a criminal trial and is not, therefore, governed by the full scope of trial rules and procedure. *Id.* at 1402. *See also Gilbert v. State*, 765 P.2d 807, 809 (Okl.Cr.1988). However, we reasoned that because 22 O.S.1971, § 991b required that revocation of a suspended sentence be supported by competent[1] evidence, and evidence obtained in violation of the Fourth Amendment had been held incompetent, such unlawfully obtained evidence could not be presented in a revocation hearing. *Michaud, supra*, at 1402.

*Michaud* was decided in the aftermath of *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961), in which the Supreme Court held that "all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court." Since *Mapp*, however, the Supreme Court has made clear that the Fourth Amendment "has never been interpreted to proscribe the introduction of illegally seized evidence in all proceedings or against all persons." *United States v. Leon*, 468 U.S. 897, 906, 104 S.Ct. 3405, 3411, 82 L.Ed.2d 677 (1984), *quoting Stone v. Powell*, 428 U.S. 465, 486, 96 S.Ct. 3037, 3048, 49 L.Ed.2d 1067 (1976). For example, "[e]vidence obtained in violation of the Fourth Amendment and inadmissible in the prosecution's case in chief may be used to impeach a defendant's direct testimony." *Id.* 468 U.S. at 910, 104 S.Ct. at 3414, *citing Walder v. United States*, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), as well as several other cases. *See also Bowman v. State*, 585 P.2d 1373, 1379 (Okl.Cr.1978), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1243, 59 L.Ed.2d 471 (1979).[2]

---

1. The current version of section 991b, though worded differently than the 1971 version, still requires that "competent evidence justifying the revocation of [a] suspended sentence [be] presented to the court...." 22 O.S.Supp.1992, § 991b (emphasis ours).

2. In *Bowman*, appellant argued that certain statements he had made immediately after his arrest were illegally obtained and thus should not have been admitted against him at trial. The trial court had allowed the State to introduce these statements to impeach appellant's direct testimony. This Court analogized the facts of the case to those in *Harris v. New York*, 401 U.S. 222, 226, 91 S.Ct. 643, 646, 28 L.Ed.2d 1

(1971), in which the Supreme Court held that otherwise voluntary statements obtained in violation of *Miranda* could be used to impeach the declarant's inconsistent direct testimony. Without deciding whether appellant's statements were in fact illegally obtained, we held they were admissible because they had been used for purposes of impeachment. *Bowman, supra*, 585 P.2d at 1379. *See also Fosberry v. State*, 509 P.2d 911, 913 (Okl.Cr.1973).

In *Wilson v. State*, 621 P.2d 1173 (Okl.Cr. 1980), appellant appealed a district court order revoking his five (5) year suspended sentence. He contended that "his constitutional privilege against self incrimination was violated when he

This Court adopted the exclusionary rule several decades before it was held by the United States Supreme Court to be enforceable against the states. *See Gore v. State,* 24 Okl.Cr. 394, 218 P. 545, 547, 550 (1923). In *Simmons v. State,* 277 P.2d 196, 198 (Okl.Cr.1954), we further held that the exclusion of evidence acquired through an unconstitutional search or seizure was not merely a rule of procedure, but a fundamental right under art. II, § 30 of the Oklahoma Constitution.[3] We will continue, when deemed appropriate, to interpret our state constitution as providing more expansive individual liberties than those conferred by the United States Constitution.

Regarding the admissibility in a revocation hearing of unlawfully seized evidence, however, we are today persuaded that art. II, § 30 of the Oklahoma Constitution should not be interpreted to require the exclusion, from revocation proceedings, of evidence seized in violation of the Fourth Amendment. The deterrence of police misconduct—which is the potential benefit gained by application of the exclusionary rule to probation proceedings—is outweighed by the harm, to the probation revocation system's "fact-finding" process, that might be caused by prohibiting the admission of relevant evidence. *Ex Parte Caffie,* 516 So.2d 831, 834 (Ala.1987). *See also United States v. Winsett,* 518 F.2d 51, 53 (9th Cir.1975). In so holding, this Court aligns itself with a host of other courts, state and federal, which have concluded that the exclusionary rule should not apply to revocation proceedings. *See United States v. Montez,* 952 F.2d 854, 857–59 (5th Cir.1992); *United States v. Finney,* 897 F.2d 1047, 1048 (10th Cir.1990), and cases cited therein; *Chase v. State,* 309 Md. 224, 522 A.2d 1348 (1987); *Ex Parte Caffie, supra; State v. Caron,* 334 A.2d 495 (Me. 1975); *State v. Thorsness,* 165 Mont. 321, 528 P.2d 692 (1974); and, *State v. Kuhn,* 7 Wash.App. 190, 499 P.2d 49 (1972). Accordingly, we overrule both *Michaud* and *Chambers, supra, Adams v. State,* 719 P.2d 843 (Okl.Cr.1986), and any other case from this Court[4] which has reached a contrary conclusion.

■ Our holding that the exclusionary rule does not apply to revocation proceedings is not, however, absolute. We agree with the Supreme Court of Alabama in *Ex*

---

was called as a witness by the State and led to admit his violations of the conditions of his suspended sentence." *Id.* at 1174. This Court noted that under the Fifth Amendment, "one may not be compelled to be a witness against himself in his own prosecution, nor may be compelled to answer questions in any sort of proceeding which might tend to incriminate him in a future prosecution." *Id.* (Citations omitted). Emphasizing that a suspended sentence revocation hearing should not be considered a criminal prosecution for purposes of the Fifth Amendment, we held that appellant had not been denied his privilege against self-incrimination when he was forced to testify.

*Wilson* makes it clear that probationers can Constitutionally be compelled to testify against themselves in revocation proceedings. This Court in *Bowman* and *Fosberry* sanctioned the use of illegally obtained evidence for impeachment purposes. The logical implication of these holdings is that a probationer may be forced to testify at his or her own revocation hearing, and that, if such testimony is inconsistent with information obtained in violation of the Fourth Amendment, such information may be introduced to impeach the probationer's direct testimony. Accordingly, this Court has already in effect adopted the view of a majority of state and federal courts that evidence obtained in violation of the Fourth Amendment is admissible against a probationer during revocation proceedings.

3. Okla.Const. art. II, § 30 provides as follows:

   The right of the people to be secure in their persons, house, papers, and effects against unreasonable searches or seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, describing as particularly as may be the place to be searched and the person or thing to be seized.

4. In *Turner v. City of Lawton,* 733 P.2d 375, 377–82 (Okl.1986), the Oklahoma Supreme Court held that evidence seized in violation of the Fourth Amendment and art. II, § 30 of the Oklahoma Constitution is inadmissible in a subsequent civil administrative personnel proceeding. The Court interpreted art. II, § 30 as providing greater protection to the citizens of Oklahoma than is provided by the Fourth Amendment. *Turner* is a civil case which interpreted both art. II, § 30, and caselaw addressing the scope of the exclusionary rule, in the context of a civil administrative proceeding. While *Turner* is persuasive authority, this Court, as the final arbiter of criminal law issues, is not bound by its holding.

*Parte Caffie, supra,* that "where illegal acts of the police were directed specifically at a probationer or where they shock the conscience, the deterrent effect that exclusion of such evidence would have outweighs the need of the sentencing court for full and [sic] reliable information." *Id.,* 516 So.2d at 836. Therefore, in certain circumstances, the conduct of the police may be so egregious as to call for the application of the exclusionary rule to revocation proceedings.

The testimony in the instant case revealed no such police misconduct. In fact, the trial court made a specific finding that the police who searched appellant's residence did so in good faith, and upon the belief that the warrant was valid. Accordingly, this case does not present the egregious police misconduct that would require application of the exclusionary rule to this revocation proceeding.

IT IS THEREFORE THE ORDER OF THIS COURT, that the decision of the district court overruling appellant's Motion to Suppress be AFFIRMED.

IT IS SO ORDERED.

/s/ James F. Lane
JAMES F. LANE,
Presiding Judge
/s/ Gary L. Lumpkin
GARY L. LUMPKIN
Vice Presiding Judge
specially concurring
/s/ Tom Brett
TOM BRETT,
Judge
dissenting
/s/ Ed Parks
ED PARKS,
Judge
dissenting
/s/ Charles A. Johnson
CHARLES A. JOHNSON,
Judge.

LUMPKIN, Vice–Presiding Judge: specially concurring.

I join in the Court's well reasoned and articulated decision in this case. It not only follows the precedent regarding interpretation of the Oklahoma Constitution, article II, section 30, established in *Degraff v.* *State,* 2 Okl.Cr. 519, 103 P. 538 (1909), and followed in *Long v. State,* 706 P.2d 915 (Okl.Cr.1985), but it also applies the federal interpretation of the United States Constitution as set forth in *U.S. v. Finney,* 897 F.2d 1047 (10th Cir.1990). See also *Langham v. State,* 787 P.2d 1279 (Okl.Cr.1990).

The dissent in this case seems to want to reinterpret the United States Constitution for the federal courts and disregard our prior decisions in *DeGraff, Long,* and *Langham.* This position is not supported by the scope of our judicial authority or prior caselaw. As footnote 2 of the Order sets out, our prior decisions dictate the result reached by the Court in this matter. In addition, footnote 4 correctly recognizes that *Turner v. City of Lawton,* 733 P.2d 375 (Okl.1986), concerns only an application in a civil administrative personnel hearing. Further, the Court in *Turner* did not recognize the prior precedent in *DeGraff* or seek to modify that decision. Therefore, while the dissent might like to interpret both constitutions in a different manner, the position is not supported by federal or state jurisprudence.

PARKS, Judge, with whom BRETT, Judge, joins, dissenting:

The fifty-four (54) words which comprise the Fourth Amendment to the United States Constitution were intended to secure to the American people the right to be free

> from unreasonable searches and seizures, such as were permitted under the general warrants issued under authority of the government, by which there had been invasions of the home and privacy of the citizens, and the seizure of their private papers in support of charges, real or imaginary, made against them.

*Weeks v. United States,* 232 U.S. 383, 390, 34 S.Ct. 341, 343, 58 L.Ed. 652 (1914). Both the Fourth and Fifth Amendments were intended to perpetuate those "principles of humanity and civil liberty which had been secured in the mother country only after years of struggle, so as to implant them in our institutions in the fullness of their integrity, free from the possibilities of

future legislative change." *Id.* at 391, 34 S.Ct. at 344. Acknowledging this struggle for the most basic of freedoms, the Supreme Court held that the violation of the right to be free from unreasonable searches and seizures "should find no sanction in the judgments of the courts, which are charged at all times with the support of the Constitution, and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights." *Id.* at 392, 34 S.Ct. at 344 (emphasis added). The Court recognized that if evidence "can ... be seized and held and used ... against a citizen accused of an offense, the protection of the 4th Amendment ... is of no value, and ... might as well be stricken from the Constitution." *Id.* at 393, 34 S.Ct. at 344. Thus was born the exclusionary rule.

Despite the rule's auspicious inception as the guardian of the Fourth Amendment, the Supreme Court has since held that it never intended to imply that "the exclusionary rule is a necessary corollary of the Fourth Amendment." *United States v. Leon,* 468 U.S. 897, 905, 104 S.Ct. 3405, 3411, 82 L.Ed.2d 677 (1984). For, the Supreme Court has said, the Fourth Amendment itself " 'has never been interpreted to proscribe the introduction of illegally seized evidence in all proceedings or against all persons.' " *Id.* at 906, 104 S.Ct. at 1311, *quoting Stone v. Powell,* 428 U.S. 465, 486, 96 S.Ct. 3037, 3048, 49 L.Ed.2d 1067 (1976). Accordingly, the rule operates as " 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than as a personal constitutional right of the party aggrieved.' " *Leon, supra,* 468 U.S. at 906, 104 S.Ct. at 3412, *quoting United States v. Calandra,* 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974).

I do not agree. Implicit in the right to be free from unreasonable searches and seizures—found in both the Fourth Amendment and art. II, § 30 of the Oklahoma Constitution—is the guarantee that evidence obtained in violation of those rights will not be used "in direct support of a charge that may subject the victim of [such a] search to imprisonment." *United States v. Workman,* 585 F.2d 1205, 1211 (4th Cir. 1978). *See also Calandra,* 414 U.S. at 348, 94 S.Ct. at 620. While a revocation proceeding is not a stage of a criminal prosecution, "it is a criminal proceeding that may result in the loss of liberty." *Workman, supra,* 585 F.2d at 1209 (emphasis added). *See also People ex. rel. Piccarillo v. New York State Bd. of Parole,* 48 N.Y.2d 76, 397 N.E.2d 354, 356, 421 N.Y.S.2d 842, 844 (1979).

The majority justifies its holding that the exclusionary rule is inapplicable to revocation proceedings, by engaging in a "balancing test" and determining that the potential detriment to revocation proceedings outweighs the potential benefit—in the form of deterrence—to be gained as a result of the rule's application. *See Calandra, supra,* 414 U.S. at 349–52, 94 S.Ct. at 620–22. This balancing test, adopted by most of the circuit courts and a significant number of state courts which have dealt with this issue, focuses more on the incidental deterrence value which application of the rule may have in a particular proceeding, than on the basis of the rule itself: to safeguard the Constitutional right to be free from unreasonable searches and seizures.

I continue to adhere to the view that the exclusion of evidence obtained through an unreasonable search or seizure is itself a fundamental right under both art. II, § 30 of the Oklahoma Constitution and the Fourth Amendment. Excluding unlawfully seized evidence not only deters future Fourth Amendment violations. More importantly, it provides a means of acknowledging and upholding the Constitutional rights of those who were in fact victims of the unlawful search or seizure. *But see Calandra, supra,* 414 U.S. at 354, 94 S.Ct. at 623. In addition, application of the exclusionary rule "preserve[s] judicial integrity by precluding courts from basing convictions on illegally obtained evidence." *Workman, supra,* 585 F.2d at 1209. As Justice Brandeis noted in his dissenting opinion in *Olmstead v. United States,* 277 U.S. 438, 485, 48 S.Ct. 564, 575, 72 L.Ed. 944 (1928), "Our Government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its exam-

ple.... If the Government becomes. a law-breaker, it breeds contempt for law[.]"

Without a means of enforcement, the guaranty against unreasonable searches and seizures found in both the Fourth Amendment, and art. II, § 30, of the Oklahoma Constitution, is but an empty promise. And, the only way to enforce these guarantees is for courts to refuse to admit evidence obtained in violation of them. I continue to adhere to the view, once espoused by the United States Supreme Court and subsequently adopted by this Court, that evidence obtained in violation of the Fourth Amendment "shall not be used at all." *Michaud v. State*, 505 P.2d 1399, 1402 (Okl.Cr.1973), *quoting Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920). *See also Chambers v. State*, 649 P.2d 795, 797 (Okl.Cr.1982). Accordingly, I must respectfully dissent from the majority's view that evidence obtained in violation of a probationer's Fourth Amendment rights is admissible against him in a revocation hearing.